## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**INTERNATIONAL COUNSEL BUREAU
and PILLSBURY, WINTHROP, SHAW,
PITTMAN, LLP,**

       **Plaintiffs,**

         **v.**

**UNITED STATES DEPARTMENT OF
DEFENSE,**

       **Defendant.**

       **Civil Action No.  08-1063 (JDB)**

---

## <u>MEMORANDUM OPINION</u>

Plaintiffs International Counsel Bureau and Pillsbury, Winthrop, Shaw, Pittman, LLP,

bring this action against the United States Department of Defense pursuant to the Freedom of

Information Act, 5 U.S.C. 552 <u>et seq.</u>, seeking records pertaining to four individuals detained at

Guantanamo Bay Naval Base, Cuba.  Plaintiffs pursue two FOIA requests.  The first seeks

medical records on behalf of Fouad Mahmoud Al Rabiah and Fayiz Mohammed Ahmed Al

Kandari.  The second seeks video, photographic and other recorded documents depicting Fawzi

Khaled Abdullah Fahad Al Odah, Khalid Abdullah Misha'al Al Mutairi, Al Rabiah or Al

Kandari.  Now before the Court are the defendant's motion for summary judgment and the

plaintiffs' motion for partial summary judgment and for Rule 56(f) discovery.  At issue is whether

the scope of the government's search for records was adequate and whether the government

properly withheld the records it did find.[1]

---

[1] Plaintiffs "do not object to the scope of the government's search for or disclosure of
medical records in response" to the request for medical records, conceding that summary
judgment for the government is appropriate on that request.  Pl.'s Mem. of P. & A. in Supp. of

## BACKGROUND

In March 2008, plaintiffs submitted a FOIA request to the Defense Department seeking records of four Kuwaiti citizens detained at Guantanamo: Fawzi Khaled Abdullah Fahad Al Odah, Khalid Abdullah Misha'al Al-Mutairi, Fouad Mahmoud Al Rabiah and Fayiz Mohammed Ahmed Al Kandari ("Kuwaiti Detainees").  See Am. Compl. ¶¶ 1-2, 4.  Plaintiffs requested

> any recording, including any image, photograph, picture, film, drawing, painting, video, videotape, tape recording, audiotape, CD, or DVD, depicting or reflecting the image, likeness, voice, audible action, or any other aspect or activity of any [Kuwaiti Detainee].

Compl., Ex. A at 1.

Following a search of its records, the Defense Department located fifty-nine photographs, forty-five videos and one audiotape responsive to plaintiffs' request.  See Def.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J. ("Def.'s Mem.") at 2; Def.'s Mem., Ex. 1, Decl. of Brig. General Rafael O'Ferrall re: Imagery ("O'Ferrall Decl.") ¶ 7-9.  The Department withheld these records in their entirety, citing four exemptions to FOIA's general rule of disclosure.  See O'Ferrall Decl. ¶ 11.  The Department also determined that it would be impractical to segregate any non-exempt information from the exempt information.  See id. ¶ 34.

The Defense Department has moved for summary judgment with respect to the adequacy of its search for records, the propriety of the claimed exemptions and the efficacy of its segregability determination.  In support, it has submitted a Vaughn index, the O'Ferrall

---

Pl.'s Opp'n to Def.'s Mot. for Summ. J., Pl.'s Mot. for Partial Summ. J., and Pl.'s Rule 56(f) Mot. for Disc. ("Pl.'s Mem.") at n.2.  Accordingly, this Court considers only plaintiffs' request for video, photographic and other recorded documents.  Plaintiffs, however, continue to seek such materials to the extent they have been redacted from the produced medical records.  Id. at 2.

Declaration and the Declaration of Rear Admiral David M. Thomas, Jr.[2]  Plaintiffs challenge the

Department's motion for summary judgment, contending that the Department's submissions are

inadequate to satisfy its burden under FOIA.  Plaintiffs instead conclude that the Court should

grant summary judgment in their favor; in the alternative, they request discovery under Rule

56(f).

## STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate

"if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material

facts are those that "might affect the outcome of the suit under the governing law."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the initial burden of

demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).  The party opposing a motion for summary judgment, however, "may not rely

merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or

as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."  Fed.

R. Civ. P. 56(e)(2).  The nonmoving party must do more than simply "show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  Any factual assertions in the movant's affidavits will be

---

[2] Rear Admiral Thomas is the Commander of Joint Task Force-Guantanamo, which oversees the detention and interrogation of enemy combatants at Guantanamo.  See Def.'s Combined Reply in Supp. of Mot. for Summ. J. and Opp'n to Pl.'s Cross Mot. for Partial Summ. J. ("Def.'s Reply"), Ex. 2, Declaration of Rear Admiral David M. Thomas, Jr. ("Thomas Decl.") ¶ 1.  Brigadier General O'Ferrall is the Deputy Commander of the Joint Task Force.  See O'Ferrall Decl. ¶ 1.

accepted as being true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA requires a federal agency to release all records responsive to a proper request except those protected from disclosure by one or more of nine enumerated exemptions set forth at 5 U.S.C. § 552(b).  A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B); see Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980).  The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements."  Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980) (internal citation and quotation omitted); see also Maydak v. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000) (the government has the burden of proving each claimed FOIA exemption).  The district court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

## ANALYSIS

**I.    Adequacy of the Defense Department's Search for Responsive Records**

To prevail on summary judgment when the adequacy of an agency's search is at issue, "the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." Morely v. Central Intelligence Agency, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotations omitted). The agency is required to set forth the search terms used and the search conducted, see Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990), as well as to describe the structure of the file systems searched, see Church of Scientology v. Internal Revenue Service, 792 F.2d 146, 150-51 (D.C. Cir. 1986), aff'd, 484 U.S. 9 (1987). In adjudicating these issues, the court "may be warranted in relying upon agency affidavits." Morley, 508 F.3d at 1116. But reliance is only appropriate where the affidavits are "relatively detailed and non-conclusory, and . . . submitted in good faith." SafeCard Servs., Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation omitted).

Plaintiffs challenge the Defense Department's motion for summary judgment as to the scope of the Department's search, the search terms used, and the Department's description of its file systems. The Court takes each point in turn.

### A.    Scope of the Search

Although a reasonable search does not require that "an agency search every record system," "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Oglesby, 920 F.2d at 68. In response to plaintiffs'

FOIA request, the Defense Department searched the records of three components of Joint Task Force-Guantanamo: the Joint Intelligence Group, the Joint Detention Group, and the Joint Task Force's Operations Directorate.  O'Ferrall Decl. ¶ 7-9; see also Thomas Decl. ¶ 22.  According to the Department, no other Joint Task Force component was "likely to have responsive information because no other components make systematic use of the information" requested by plaintiffs. O'Ferrall Decl. ¶ 10.  Rear Admiral Thomas echoes this conclusion: "I have no reason to believe that any other Joint Task Force office would have responsive records."  Thomas Decl. ¶ 22.  And the Department argues that "[n]o other [Joint Task Force] components have authority for any aspect of the ongoing housing, care, feeding or security of the detainees, nor do any other components have responsibility for storing records relating to any of these areas."  Def.'s Reply at 6.  The Department therefore asserts it has satisfied its burden under FOIA.

Plaintiffs, for their part, contend that the Defense Department improperly limited its search, and hence "failed to search for certain types of records that fell squarely within Plaintiffs' FOIA request."  Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross Mot. for Partial Summ. J. ("Pl.'s Reply") at 2; see also Pl.'s Mem. at 10 ("The O'Ferrall Declaration . . . demonstrates that the government constructed its searches too narrowly.").  For example, plaintiffs note that the Defense Department audio recorded detainees' Combatant Status Review Tribunal ("CSRT") proceedings. See Pl.'s Mem. at 14-15.  And although at least two of the Kuwaiti Detainees participated in such proceedings, plaintiffs suggest the Department failed to search for these records.  Pl.'s Reply at 5-6.  Moreover, plaintiffs maintain that the government artificially limited the scope of the search it did conduct by seeking records regarding only "housing, care, feeding or security of the detainees."  Pl.'s Reply, at 3; see also Thomas Decl. ¶ 22.  "By limiting the scope of the search,"

plaintiffs argue, "the government potentially missed numerous responsive documents."  Pl.'s Reply at 3.

Finally, plaintiffs suggest that publicly-available information confirms the existence of other responsive records.  They note, for example, that under the standard operating procedures for the Guantanamo detention centers, the government is required to take and maintain photographs of detainees engaged in hunger strikes.  See Pl.'s Mem., Ex. 4b, Camp Delta Standard Operating Procedures, 28 March 2003 § 19-8k.  According to medical records, "at least one of the Kuwaiti Detainees has gone on a hunger strike."  Pl.'s Reply at 10.  Nevertheless plaintiffs assert "[t]here is no indication that the government searched the hunger strike photos for images of this Kuwaiti Detainee."  Id.

Although the Defense Department concedes it did not search for records of the CSRTs, it asserts that "a DOD organization completely separate and distinct from [the Joint Task Force]" maintains the records.  Def.'s Reply at n.4.  Further, according to the Department, these records "are publically available, in transcript form."  Id., at 13-14.  The Department therefore concludes that it was unnecessary to include these records in its search.  Id.  Finally, with regard to plaintiffs' contention that the Defense Department did not search records required by Camp Delta's Standard Operating Procedures, the Department offers that this information was either maintained by the three components that were searched or "not recorded by [the Joint Task Force.]"  Thomas Decl. ¶ 28a-28h.[3]

_____

[3] The Defense Department does not respond to plaintiffs' assertion that it improperly limited its search to recordings documenting the "housing, care, feeding or security of the detainees."

The Defense Department's search was inadequate.  It did not search records maintained by Defense Department components other than those within Joint Task Force-Guantanamo.  See Def.'s Reply, at n.4.  Nor, apparently, did it search records of the Kuwaiti Detainees other than those documenting housing, care, feeding or security.[4]  Plaintiffs' FOIA request was not limited either to particular Defense Department components or to records documenting particular activities.  See Oglesby, 920 F.2d at 68 ("[T]he agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.").  And plaintiffs' request seeks "any recording" depicting the Kuwaiti Detainees.  Compl., Ex. A at 1.  The Department is therefore incorrect that it need not produce audio or video recordings of CSRT proceedings because transcripts are publicly available.

Hence, summary judgment is appropriate for plaintiffs on the adequacy of the scope of the Defense Department's search.  There is no genuine issue of material fact regarding the Department's failure to search Defense Department components beyond Joint Task Force-Guantanamo.  Nor is there a genuine dispute that the Department's search for records documenting only the Kuwaiti Detainees' housing, care, feeding or security was inappropriately limited.  The government will therefore be required to search records of the Defense Department and its components for documents responsive to plaintiffs' FOIA request.[5]

_____

[4] At the very least, the Department did not explain why it only searched records relating to housing, care, feeding or security.

[5] Because the Defense Department did not adequately search its records in response to plaintiffs' FOIA request, the Court need not address all of plaintiffs' arguments challenging the adequacy of the Department's search.  Certainly, the Department must search the records of all Defense Department components likely to have relevant documents.  See Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (search must be "reasonably calculated to uncover all relevant documents").  Additionally, the Court notes the Department's broad definition of

### B.    *Description of the Search Terms*

When responding to a FOIA request, an agency must set "forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched . . . ."  Oglesby, 920 F.2d at 68.  In support of its inquiry, the Defense Department has submitted two declarations explaining which search terms were used, and why the terms were chosen.  See, e.g., Thomas Decl. ¶ 25 (Joint Detention Group records searched according to how they were indexed -- by inmate security number); id. at ¶ 23 (Operations Directorate records searched by detainee's name, country of origin, and inmate security number); id. at ¶ 24 (Joint Intelligence Group records searched by detainee's name and inmate security number).  These declarations also explain why certain records were not searched.  See, e.g., id. at ¶ 6 (Joint Task Force's Security Directorate records not searched because they were indexed by date; finding a particular detainee "would require knowledge of the exact date and time that the detainee walked by a particular camera"); Def.'s Reply at 11 ("[T]here was no feasible method to search [the Security Directorate files] for records responsive to Plaintiffs' FOIA request.").

Although plaintiffs initially challenged the Department's "limited or undisclosed search terms," see Pl.'s Mem. at 10-12, they largely dropped this challenge in response to the Thomas Declaration.  Nevertheless, plaintiffs maintain that the Department failed to adequately explain why it did not search records that are not indexed by unique identifying information, such as

---

"Forced Cell Extraction," which the Department suggests limits the number of potentially responsive documents.  See Def.'s Reply at 14.  Plaintiffs contend that Camp Delta's Standard Operating Procedures do not support this definition.  See Pl.'s Reply at 9.  The Court believes the Department's new search will resolve any concerns raised by the Department's definition.

inmate security number and name.  <u>See</u> Pl.'s Reply at 3-4.  Specifically, plaintiffs assert that the "government provides no detail on the volume of this material or any real estimate of the time or cost that it would incur in reviewing the tapes."  <u>Id.</u> at 4.  Accordingly, plaintiffs assert, the government "cannot claim it conducted an adequate search."  <u>Id.</u> (citing <u>Schrecker v. Dep't of Justice</u>, 254 F.3d 162, 165 (D.C. Cir. 2001)).

Plaintiffs are correct.  The Defense Department, by not providing any detail on whether a search of records indexed by date would be "unduly burdensome," has failed to demonstrate the reasonableness of its search terms.  <u>See Schrecker</u>, 254 F.3d at 165.  Although the Department's claim of infeasibility as to records indexed by date may well be correct, the Court cannot credit this bare assertion.  The Department therefore must either search these records or demonstrate why it would be impractical to do so.

### C.      *Description of the Agency's File System*

Finally, for a FOIA search to be reasonable, the agency must also "identify the searched files and describe at least generally the structure of the agency's file system."  <u>Church of Scientology</u>, 792 F.2d at 151.  The Defense Department has satisfied this requirement.  The Thomas Declaration describes the structure of Joint Task Force-Guantanamo and the records maintained by its offices and subordinate components.  <u>See</u> Thomas Decl. ¶¶ 4-20; <u>see also</u> Def.'s Reply at 6-13.  And the declaration permits plaintiffs to evaluate the Defense Department's assertion that only three components of the Joint Task Force maintain records responsive to plaintiffs' request.  This is sufficient for the government to carry its burden under FOIA.  <u>See Oglesby</u>, 920 F.2d at 68; <u>Church of Scientology</u>, 792 F.2d at 150-51.  Indeed, plaintiffs largely drop this challenge in their reply brief.  The Court notes, however, that going forward, the

Defense Department must fully describe the records it searches pursuant to the Court's order. And it must use terms reasonably calculated to produce responsive records.

## II.    Propriety of Withholding Documents Under FOIA's Exemptions

The Defense Department has also moved for summary judgment on the propriety of its withholdings under four of the statutory exemptions to FOIA's general rule of disclosure. "[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Morley, 508 F.3d at 1122.   This justification -- a Vaughn index -- "must explain specifically which of the nine statutory exemptions to FOIA's general rule of disclosure supports the agency's decision to withhold a requested document or to delete information from a released document." Founding Church of Scientology, Inc. v. Bell, 603 F.2d 945, 947 (D.C. Cir. 1979); see also Vaughn, 484 F.2d at 827.   Therefore a "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." Morley, 508 F.3d at 1122.

The Defense Department has withheld video, photographic and other responsive records pursuant to Exemptions 1, 2, 3 and 6.[6]  In support of its withholding, the Department submits a one-page Vaughn index purportedly covering ninety-two records, and two declarations describing generally the reasons for withholding the records.  These submissions are inadequate. The Department merely lists the asserted exemptions by document.  The Department does not

_____

[6] The Defense Department subsequently withdrew its withholding of the photographs on Exemption 1 grounds.  See Def.'s Reply at 3.

"subdivide the document[s] under consideration into manageable parts cross-referenced to the relevant portion of the government's justification."  Vaughn, 484 F.2d at 827.  Nor does it describe how the asserted exemptions apply to the withheld documents.  Id.  And the Department does not consider unique documents separately; rather, it categorically applies each exemption to groups of documents.  Contra Morley, 508 F.3d at 1122.  This Court cannot fairly assess the propriety of the exemption claims because there is a dearth of "reasonably specific detail" about how the exemptions apply to the documents as a whole.  Casey, 656 F.2d at 738.[7]

Nor are these deficiencies cured by the O'Ferrall Declaration and the Thomas Declaration. Those declarations, like the Vaughn index, do not explain with the necessary detail how a particular exemption supports the Department's decision to withhold a responsive document.  See Bell, 603 F.2d at 946.  Rather, the declarations simply assert, in general terms, the justifications for withholding documents.  See, e.g., Thomas Decl. ¶ 24 (release of audio recording "would risk disclosing intelligence sources and methods, causing harm to national security"); O'Ferrall Decl. ¶ 28 (release of audio recording "would permit hostile entities to gain specific knowledge of the operational methods employed in certain circumstances, which would provide them an opportunity to develop countermeasures or resistence to tactics"); Id. at ¶ 27 (release of forced cell extraction video "would permit hostile entities to gain specific knowledge of the operational methods employed in certain circumstances, which would provide them an opportunity to develop countermeasures or resistence to tactics"); Id. at ¶ 33 (forced cell extraction videos

---

[7] This inadequacy is particularly evident when the Vaughn index for these records is compared to the Defense Department's Vaughn index for medical records, the latter of which encompasses twenty-four pages and outlines in detail what information has been withheld from each unique document.  See Def.'s Mem., Ex. 1.  Tellingly, plaintiffs did not object to that Vaughn index.  See Pl.'s Mem. at n.2.

"contain personally identifiable information of [extraction] team members").  Although the Court can certainly imagine that the asserted justifications may be valid as to <u>some</u> of the withheld records, it cannot conclude they are categorically valid as to all withheld records

None of the Department's justifications are more than "vague, broad [and] wholesale claims of exempt status."  <u>Elec. Privacy Info. Ctr.v. Dep't of Justice</u>, 511 F. Supp. 2d 56, 73 (D.D.C. 2007).  The Department does not, as required by <u>Vaughn</u>, marry a specific exemption with a particular part of the withheld document.  <u>See</u> <u>PHE, Inc. v. Dep't of Justice</u>, 983 F.2d 248, 250 (D.C. Cir. 1993) ("[A]n affidavit that contains merely a categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." (internal quotation omitted)).  Hence, the Department has not provided this Court with sufficiently detailed explanations of why the claimed exemptions are relevant, and correlated, to the withheld records.  <u>See</u> <u>Morley</u>, 508 F.3d at 1122.

Without this detail, the Court cannot assess the validity of the Defense Department's claims of exemption.  Accordingly, both parties' motions for summary judgment will be denied without prejudice as to the exemption claims.  If the Department wishes to maintain its exemption claims, it must supplement its <u>Vaughn</u> submission.[8]  In doing so, the Department should be mindful of its duty to segregate all non-exempt material -- an issue not adequately addressed through its current <u>Vaughn</u> submission.

---

[8] Of course, if the Defense Department wishes to withhold documents found pursuant to the new search ordered here, it must submit a <u>Vaughn</u> index and accompanying declarations justifying the exemptions for those records as well.

**CONCLUSION**

For these reasons, plaintiffs' motion for partial summary judgment will be granted in part and denied in part.  Plaintiffs' motion will be granted with respect to the adequacy of the Defense Department's search.  The Department is required to conduct a new search of the records of the Defense Department and its components for documents responsive to plaintiffs' FOIA request.  Both parties' motions will be denied without prejudice as to the Defense Department's exemption claims.  The Department's <u>Vaughn</u> index is inadequate and conclusory, and therefore this Court cannot judge the propriety of the exemption claims.  Finally, judgment will be entered in favor of the Defense Department as to production of the medical records.  A separate Order accompanies this Memorandum Opinion.


                                                      /s/ John D. Bates
                                                     JOHN D. BATES
                                     United States District Judge


Dated:   September 25, 2009