**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**INTERNATIONAL COUNSEL BUREAU**
**and PILLSBURY, WINTHROP, SHAW,**
**PITTMAN, LLP,**

      **Plaintiffs,**

      **v.**

**UNITED STATES DEPARTMENT OF**
**DEFENSE,**

      **Defendant.**

          **Civil Action No.  08-1063 (JDB)**

---

## MEMORANDUM OPINION

International Counsel Bureau and Pillsbury, Winthrop, Shaw, Pittman, LLP (collectively "ICB") bring this action against the United States Department of Defense pursuant to the Freedom of Information Act, 5 U.S.C. § 552, seeking records pertaining to four individuals detained at Guantanamo Bay Naval Base. The Court previously granted in part and denied in part the parties' cross-motions for summary judgment, and ordered the Department to conduct an additional search for responsive records. See Int'l Counsel Bureau v. Dep't of Def., 657 F. Supp. 2d 33 (D.D.C. 2009). The Department has now done so, and the parties have filed renewed motions for summary judgment as to the adequacy of the Department's new search, and as to the propriety of the Department's decision to withhold records under FOIA exemptions 1, 2, 3, and 6. For the reasons detailed below, the Court will grant in part and deny in part both motions.

## BACKGROUND

In March 2008, ICB submitted a FOIA request to the Defense Department seeking

records of four Kuwaiti citizens detained at Guantanamo: Fawzi Khaled Abdullah Fahad Al

Odah, Khalid Abdullah Misha'al Al-Mutairi, Fouad Mahmoud Al Rabiah and Fayiz Mohammed

Ahmed Al Kandari ("detainees"). See Am. Compl. ¶¶ 1-2, 4. ICB requested, among other

things,

> [a]ny recording, including any image, photograph, picture, film,
> drawing, painting, video, videotape, tape recording, audiotape, CD,
> or DVD, depicting or reflecting the image, likeness, voice, audible
> action, or any other aspect or activity of any [of the four detainees].

Compl., Ex. A at 1-2.

The Defense Department searched its records and located fifty-nine photographs, forty-

five videos and one audiotape responsive to plaintiffs' request. See Int'l Counsel Bureau, 657 F.

Supp. 2d at 36. The Department withheld these records in their entirety, relying on exemptions

1, 2, 3, and 6 to FOIA's general rule of disclosure. See id. The Department also determined that

it would be impractical to segregate any non-exempt information from the records. See id. at 36-

37. The Department moved for summary judgment, and ICB moved for partial summary

judgment.[1]

The Court granted in part and denied in part both parties' motions. The Court first

concluded that the Department's search for responsive materials was inadequate. For example,

the Department "did not search records maintained by Defense Department components other

than those within Joint Task Force-Guantanamo." Id. at 39. Nor, apparently, had it searched

"records of the . . . Detainees other than those documenting housing, care, feeding or security."

Id. Accordingly, the Court ordered the Department to conduct an additional search. Id. at 40-41.

---

[1] ICB conceded that summary judgment in favor of the government was appropriate on a
separate request for the detainees' medical records. See id. at 36 n.1.

The Court also concluded that it could not evaluate the propriety of the Department's withholdings on the record before it. The Department's <u>Vaughn</u> index, the Court found, was "inadequate," as it failed to "subdivide the document[s] under consideration into manageable parts cross-referenced to the relevant portion of the government's justification." <u>Id.</u> at 42 (internal quotation marks omitted). And the Department's declarations did not cure these deficiencies, as they did "not explain with the necessary detail how a particular exemption supports the Department's decision to withhold a responsive document." <u>Id.</u> Thus, the Court concluded that it could not "fairly assess the propriety of the exemption claims because there is a dearth of reasonably specific detail about how the exemptions apply to the documents as a whole." <u>Id.</u> (internal quotation marks omitted). Instead, the Court instructed the Department that if it "wishes to maintain its exemption claims, it must supplement its Vaughn submission." <u>Id.</u>

The Department has now conducted a new search of its records. It has also offered several declarations -- some new, and some submitted with its previous motion for summary judgment -- as well as a new <u>Vaughn</u> index. In the latter, the Department identifies responsive records consisting of forty-seven photographs, forty-five videos, and five audiotapes.[2] <u>See</u> Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot.") [Docket Entry 36], at 2; Def.'s Reply in Supp. of Renewed Mot. ("Def.'s Reply") [Docket Entry 42], Ex. 4 (Corrected Second <u>Vaughn</u> Index ("<u>Vaughn</u> Index")). Both parties have filed renewed motions for summary judgment addressing whether the Department's new search was adequate, and whether the Department is justified in withholding the records.

---

[2] In other words, the Department's new search appears to have located four additional audiorecordings, no additional videorecordings, and twelve fewer photographs. The Department does not explain how its new search produced fewer responsive photographs.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Thus, the non-moving party cannot rely on mere speculation or compilation of inferences to defeat a motion for summary judgment. See Hutchinson v. Cent. Intelligence Agency, 393 F.3d 226, 229 (D.C. Cir. 2005). Nor can the non-moving party rely on hearsay statements or conclusory statements with no evidentiary basis to establish a genuine issue of material fact. See Assoc. of Flight Attendants v. Dep't of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Moreover, a moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the non-moving party. See Celotex, 477 U.S. at

-4-

322; see also Anderson, 477 U.S. at 252 (summary judgment appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]").

FOIA requires federal agencies to release all records responsive to a proper request except those protected from disclosure by any of nine enumerated exemptions set forth at 5 U.S.C. § 552(b).  A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980).  The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted); accord Maydak v. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000).  The district court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973).

## DISCUSSION

### I.  Adequacy of the Department's Search

To establish that its search was adequate, "the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant

documents." Morley v. Cent. Intelligence Agency, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks omitted). The agency must set forth the search terms used and the search conducted, see Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990), and must describe the structure of the file systems searched, see Church of Scientology v. Internal Revenue Serv., 792 F.2d 146, 150-51 (D.C. Cir. 1986), aff'd, 484 U.S. 9 (1987). In adjudicating these issues, the court "may be warranted in relying upon agency affidavits." Morley, 508 F.3d at 1116 (internal quotation marks omitted). But "such reliance is only appropriate when the agency's supporting affidavits are relatively detailed and nonconclusory and . . . submitted in good faith." Id. (internal quotation marks omitted) (ellipses in original).

ICB contends that "[a]lthough [the Department's] second search was an improvement over the first in some respects," it is still inadequate in a number of ways. Pls.' Renewed Mot. for Summ. J. ("Pls.' Mot.") [Docket Entry 38], at 1. ICB complains, for example, that the Department failed to search the Office of the Secretary of Defense, which, it argues, possesses at least one responsive photograph. See id. at 5-6. The Department avers, however, that the Office of the Secretary of Defense "neither creates nor receives and maintains the records of individual detainees." Def.'s Reply, Second Decl. of William Kammer ("Second Kammer Decl."), ¶ 3. And the Department explains that the responsive image to which ICB refers was actually produced by the Office for the Administrative Review of the Detention of Enemy Combatants, id., an office that has been searched to ICB's satisfaction, see Pls.' Mot. at 1 n.1. ICB does not challenge the Department's explanations, and the Court will accept the Department's "relatively detailed and

nonconclusory" declaration on this point.[3]

ICB also identifies inconsistencies in the Department's declarations that, it contends, suggest that the Department's search was incomplete.  See Pls.' Mot. at 8.  As ICB points out, Rear Admiral David Thomas states that "[i]n this case, the JIG, JDG, and J-3 office are the only JTF-GTMO entities that would reasonably have responsive records."  Def.'s Mot., Decl. of David Thomas ("Thomas Decl."), ¶ 22.  Rear Admiral Thomas Copeman, on the other hand, offers that "[t]he J-3 office . . . does not store image, audio, or video files of detainees, nor information about them as individuals."  Def.'s Mot., Decl. of Thomas Copeman ¶ 7.  ICB again does not challenge the Department's explanation for this inconsistency: Combat Camera -- the sector of the Department's J-3 office that handled images of the detainees -- was moved out of the J-3 office between the time the two declarations were given.  See Def.'s Reply, Decl. of Paul O'Connor ("O'Connor Decl."), ¶ 19.[4]

ICB next observes that the Department failed to search other iterations of the detainees' names when searching USCENTCOM's files.  See Pls.' Mot. at 10-11.  The Department now states that it "is willing to conduct searches using" a variation of each detainee's name that it lists in its reply brief.  Def.'s Reply at 4.  ICB does not object to this proposal, and the Court will

---

[3] ICB similarly argues that the Department should have searched for responsive records in its Office of Detainee Affairs.  See Pls.' Mot. at 7-8.  The Department replies that such a search is unnecessary, as this office "does not routinely create or store audio, video or photographic images of individual detainees."  Second Kammer Decl. ¶ 4.  ICB does not take issue with this explanation.

[4] ICB also complains that the Department's declarations do not account for JTF-GTMO's J-5 and J-7 components, "or the nature of records in their possession."  Pls.' Mot. at 9.  The Department responds that "[t]hese two directorates simply do not exist within JTF-GTMO's command structure."  O'Connor Decl. ¶ 4.

adopt it.

Finally, ICB objects that the Department has failed to search pre-2007 Combat Camera videos taken at Guantanamo. See Pls.' Mot. at 9-10.[5] As the Department has previously explained, "[d]uring the first few years of JTF-GTMO operations, Combat Camera maintained no standardized system for labeling video and still imagery files." Def.'s Reply in Supp. of First Mot. for Summ. J. [Docket Entry 22], at 8. Therefore, according to the Department, "it would take a team of, at a minimum, 12 persons thoroughly familiar with the images of the detainees in question to work in shifts sorting through all the hundreds of thousands of images, over a year to be able to separate the requested images if available." O'Connor Decl. ¶ 5.

"Generally, an agency need not honor a FOIA request that requires it to conduct an unduly burdensome search." Pub. Citizen, Inc. v. Dep't of Educ., 292 F. Supp. 2d 1, 6 (D.D.C. 2003). In this case, the Court agrees with the Department that enlisting a full-time staff of twelve for a year to review hundreds of thousands of unsorted images would impose such an undue burden.[6] See Am. Fed. of Gov't Employees. v. Dep't of Commerce, 907 F.2d 203, 209 (D.C. Cir. 1990) (search unduly burdensome where it "would require the agency to locate, review, redact,

_____

[5] ICB initially contended that the Department's expansive definition of "forced cell extractions" cast doubts on the adequacy of its search of the post-2007 Combat Camera videos as well. See id. at 11-12. In its reply, ICB appears to have dropped this particular challenge, at least as it relates to the adequacy of the Department's search (as opposed to the propriety of its withholdings). See Pls.' Reply at 2 n.1. ICB does continue to object that the Department "has not articulated a single, clear definition of the term [forced cell extractions]." Id.

[6] "Courts are entitled to rely upon an agency affidavit for an explanation of why a further search would be 'unduly burdensome' when the affidavit is 'relatively detailed, nonconclusory, and not impugned by evidence in the record of bad faith on the part of the agency." Wolf v. Cent. Intelligence Agency, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (quoting McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)). At least as to this point, the Court concludes that O'Connor's declaration meets this standard.

and arrange for inspection a vast quantity of material").  ICB observes, however, that "[s]earches that last a year or more are not uncommon in FOIA cases."  Pls.' Reply in Supp. of Renewed Mot. ("Pls.' Reply") [Docket Entry 43] at 3.  True enough.  But there is no indication that such year-long searches normally require a staff of a dozen people working full-time to search hundreds of thousands of records, as would be the case here.

ICB suggests that at the very least, the Court should order the Department "to search one year's worth of pre-2007 records; . . . report back to the Court on how long it took [the Department] to complete that search; and . . . produce the responsive and nonexempt records from that search."  Id. at 4.  The Court declines to adopt this proposal.  The record does not indicate how much Combat Camera imagery was created in each year before 2007.  Thus, the Court cannot evaluate whether even a somewhat narrowed search would impose an undue burden on the agency.

In sum, except for the names used in its examination of USCENTCOM's files, the Department's new search is "reasonably calculated to uncover all relevant documents."  Hence, with that one exception, the Court will grant the Department's motion for summary judgment as to the adequacy of its search.

## II.     Propriety of the Department's Withholdings

The Department has withheld virtually all records responsive to ICB's request on the grounds that they fall within FOIA exemptions 1, 2, 3, or 6.  The agency bears the burden of justifying any withholding.  See 5 U.S.C. § 552(a)(4)(B); see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 861 (D.C. Cir. 1980) ("[T]he burden is on [the agency] to establish [its] right to withhold information from the public.").  "[W]hen an agency seeks to

withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Morley, 508 F.3d at 1122 (internal quotation marks omitted). This justification -- taking the form of either a Vaughn index or sufficiently detailed affidavits, or both -- "must explain specifically which of the nine statutory exemptions to FOIA's general rule of disclosure supports the agency's decision to withhold a requested document or to delete information from a released document." Founding Church of Scientology, Inc. v. Bell, 603 F.2d 945, 947 (D.C. Cir. 1979); see also Vaughn, 484 F.2d at 827. "[A] 'categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'" Morley, 508 F.3d at 1122 (quoting King v. Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987)).

A.      Video- and audiorecordings

Citing FOIA exemptions 1 and 2, the Department has withheld in their entirety all forty-five responsive videorecordings it has located, as well as one audiorecording.[7] The Court will address exemption 2 first.

1.      *Exemption 2*

Exemption 2 protects material that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Such protection is afforded only to material that meets two criteria. First, the material must be "used for predominantly internal purposes." Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en

---

[7] The Department has released to ICB four additional redacted audiorecordings. See Vaughn Index. ICB "does not challenge th[is] production," Pls.' Mot. at 1 n.1, and hence the Court will grant the Department summary judgment as to these recordings.

banc).  Second, the agency must show either that "disclosure [of the material] may risk circumvention of agency regulation" or that "the material relates to trivial administrative matters of no genuine public interest."  Schwaner v. Dep't of the Air Force, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations and internal quotation marks omitted).  "Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption," and "[p]redominantly internal documents that deal with trivial administrative matters fall under the 'low 2' exemption."  Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1207 (D.C. Cir. 1992).

Here, only the "high 2" exemption is at issue.[8]  In order to withhold materials under the high 2 exemption, an agency must show that their disclosure "would significantly risk circumvention of federal regulations or statutes."  Elliott v. Dep't of Agric., 596 F.3d 842, 847 (D.C. Cir. 2010) (emphasis added); see also Crooker, 670 F.2d at 1074 ("We add the word 'significantly' to stress the narrow scope of our construction of Exemption 2; in all cases in which the Government relies on Exemption 2, it remains the Government's burden to prove the 'significant risk.'").

All forty-five withheld videorecordings in this case relate to forced cell extractions ("FCEs").  FCEs generally occur "when a detainee has demonstrated conduct that can be charcterized as combative, will not voluntarily leave his cell, or is exhibiting self-harmful behavior and will not respond to guard force instructions."  O'Connor Decl. ¶ 7.  In the context of

_____

[8] In its renewed motion for summary judgment, the Department invokes the 'low 2' exemption for the telephone numbers, fax numbers, and addresses of Department personnel.  See Def.'s Mot. at 14.  It appears that the Department is referring to information contained in various detainee medical records, documents for which the Court has already granted summary judgment in the Department's favor.  See Int'l Counsel Bureau, 657 F. Supp. 2d at 36 n.1.

an FCE, "Combat Camera will film the series of events from the preparation of the FCE team members, to the completion of the operation when the detainee is moved to the medical facility for evaluation of possible injury, and the medical examination of any member of the FCE team who may be injured during the FCE." Id. Combat Camera also "film[s] other events unrelated to FCE operations and or detainee movements," but it has reviewed the FCE videos at issue here, "and they only contain images pertaining to the FCE[s] and not of other unrelated activities or events." Id. ¶¶ 7-8.

To support its argument that the withheld FCE videorecordings fall within the high 2 exemption, the Department offers two declarations. First, Brigadier General Rafael O'Ferrall states that the videos' release "would permit hostile entities to gain specific knowledge of the operational methods employed in certain circumstances, which would provide them an opportunity to develop countermeasures or resistence tactics that could also be used in other U.S. military detention facilties." Def.'s Mot., Decl. of Rafael O'Ferrall ("O'Ferrall Decl."), ¶ 27. Similarly, O'Connor offers that "the videos show the inside of the detention facilities, the cell numbers and other details of the operations of the detention camps that if released will provide information that may be utilized to circumvent security measures and disrupt good order and discipline in the camps." O'Connor Decl. ¶ 13.

These declarations fail to meet the Department's burden under exemption 2. O'Ferrall and O'Connor briefly describe how the videos, if released, could lead to "circumvention of federal regulations or statutes." See O'Ferrall Decl. ¶ 27 (detainees may "develop countermeasures"); O'Connor Decl. ¶ 13 (detainees could "circumvent security measures"). But neither declaration indicates that there is a "significant risk" that such circumvention will occur. See Crooker, 670

F.2d at 1074 ("[I]t remains the government's burden to prove the 'significant risk.'").  O'Ferrall's declaration simply offers that disclosure "would provide [hostile entities] <u>an opportunity</u> to develop countermeasures."  O'Ferrall Decl. ¶ 27 (emphasis added).  And O'Connor's statement is similarly hedged: information in the videos "<u>may</u> be utilized to circumvent security measures."  O'Connor Decl. ¶ 13 (emphasis added).  Neither declaration, then, offers any assessment as to the likelihood that such harms will result if the videos are released.  And without any information as to the likelihood that detainees or others will use the information contained in these videos to "develop countermeasures" or "circumvent security measures," the Court cannot conclude, as a matter of law, that the videos' release would create a "significant risk" that they will do so.  See <u>Hidalgo v. Fed. Bureau of Investigation</u>, 541 F. Supp. 2d 250, 253-54 (D.D.C. 2008) (a declaration stating that individuals "could scheme" to circumvent investigations is insufficient under exemption 2).

The Department's justification for withholding the audiorecording pursuant to exemption 2 is similarly infirm.  The Department offers only that its release "would permit hostile entities to gain specific knowledge of the operational methods employed in certain circumstances, which would provide them an opportunity to develop countermeasures or resistance tactics that could also be used in other U.S. military detention facilities."  O'Ferrall Decl. ¶ 28.  This is, word for word, the same explanation O'Ferrall offers for withholding the videorecordings under exemption 2, and it is inadequate for the same reason.  The Court therefore will deny the Department summary judgment on its exemption 2 claims.

2.  *Exemption 1*

FOIA's exemption 1 permits agencies to withhold records if they are "(A) specifically

authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). To show that it has properly withheld information under FOIA Exemption 1, an agency must show both that the information was classified pursuant to the proper procedures, and that the withheld information meets the standard for classification. See Salisbury v. United States, 690 F.2d 966, 971-72 (D.C. Cir. 1982).

In this case, the Department has withheld the recordings at issue based on Executive Order 12,958, as amended by Executive Order 13,292. See O'Ferrall Decl. ¶¶ 12-13. Pursuant to these Executive Orders, information may be classified if "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." Exec. Order. No. 13,292, 68 Fed. Reg. 15,315 (Mar. 28, 2003).

The Department provides several declarations to justify its decision to withhold the videorecordings under exemption 1.[9] "In the context of national security exemptions, such declarations merit 'substantial weight.'" Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting King, 830 F.2d at 217); accord Morley, 508 F.3d at 1124 ("[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."). Nonetheless, even when applying exemption 1, "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping

_____

[9] It appears, but is not clear, that the Department contends that the entirety of the recordings are properly withheld under exemption 1. Compare Vaughn Index (offering no limitation to its exemption 1 claim), with O'Connor Decl. ¶ 12 (arguably suggesting that only portions of the videos are withheld under exemption 1). Despite the Court's prior admonition, then, the Department still has not "subdivide[d] the documents under consideration into manageable parts cross-referenced to the relevant portion of the government's justification." Int'l Counsel Bureau, 657 F. Supp. 2d at 42 (internal quotation marks omitted).

will not, standing alone, carry the government's burden." Larson v. Dep't of State, 565 F.3d 857, 864 (D.C. Cir. 2009) (citing Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).  "[D]eference is not equivalent to acquiescence," and a declaration in support of an exemption 1 withholding "may justify summary judgment only if it is sufficient 'to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" Campbell, 164 F.3d at 30 (quoting King, 830 F.2d at 218).

Rear Admiral David Thomas explains why the Department has withheld these videos pursuant to exemption 1:

> Disclosure of the classified information and sensitive internal procedures, developed specifically for military detention operations, contained in these videos would be harmful to national security.  Such disclosure would allow hostile entities to develop counter-tactics for use in military detention facilities, placing military members at risk and impeding the lawful conduct of military detention operations.

Thomas Decl. ¶ 30; see also Copeman Decl. ¶ 25 (same).  O'Connor further offers that at least portions of these videos -- depictions of "the detainee being returned to his cell" -- are "properly exempted under b(1) for having information that may be used to develop counter-tactics." O'Connor Decl. ¶ 12.

Based on these declarations, taken together, the Court concludes that at least portions of the FCE videos are properly withheld under exemption 1.  The declarations indicate that these videos show, among other things, how military personnel at Guantanamo Bay forcibly move prisoners in and out of their cells.  They further explain that these "sensitive internal procedures," if released, would permit individuals "to develop counter-tactics," thus "placing military

members at risk."  These declarations therefore offer the "little proof or explanation" necessary,

Morely, 508 F.3d at 1124, to show that, if released, at least portions of the videos "reasonably

could be expected to result in damage to the national security."  Larson, 565 F.3d at 865 ("We

have consistently deferred to executive affidavits predicting harm to the national security, and

have found it unwise to undertake searching judicial review." (internal quotation marks

omitted)).

Although it may be clear how videos showing the movement of detainees in and out of

their cells would permit hostile entities to develop counter-tactics, the Department's declarations

do not justify withholding the entirety of the videos under exemption 1.  As O'Connor explains,

FCE videos generally include "the preparation of the FCE team members" and "the medical

examination of any member of the FCE team who may be injured during the FCE."  O'Connor

Decl. ¶ 7.[10]  The Department's declarations, however, offer no explanation of how these portions

of the videos -- during which no detainees would be present -- would permit detainees to develop

counter-tactics.  O'Connor does state that

> [p]ost extraction activities are withheld due to the participation of U.S. military
> personnel who are involved in the examination and or treatment, if necessary, of
> the detainee once taken to the medical examination facility, and of the U.S.
> military guard force once the detainee is taken back to the block where his cell is
> located.

O'Connor Decl. ¶ 12.  But O'Connor does not indicate how the mere "participation of U.S.

military personnel" in post-extraction activities, without more, "reasonably could be expected to

result in damage to the national security."  It is thus the sort of "overly vague" and "sweeping"

---

[10] The Department has not provided the Court with any details as to the contents of these
particular videos, except that they "only contain images pertaining to the FCE[s] and not of other
unrelated activities or events."  Id. ¶ 8.

declaration that "will not, standing alone, carry the government's burden." Larson, 565 F.3d at 864. Accordingly, the Court will require the Department once again to supplement its declarations.[11]

Although the Department's declarations establish that at least some portions of the videorecordings are properly withheld under exemption 1, the same is not true for the remaining audiorecording. To justify withholding this recording, Thomas offers that "releasing it would risk disclosing intelligence sources and methods, causing harm to national security." Thomas Decl. ¶ 24. And O'Ferrall states that it should be withheld because "it contains information concerning that [sic] might identify intelligence sources and methods, and information that, if released, can cause damage to national security." O'Ferrall Decl. ¶ 17.

This is insufficient. The D.C. Circuit has made clear that "a 'categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure'" is "'clearly inadequate'" to support withholding records, even under exemption 1. Campbell, 164 F.3d at 30 (quoting PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993)).

---

[11] Because it appears that each of these videos contains at least some information that is properly withheld under exemption 1, the Court might normally evaluate the Department's contention that "any non-exempt material these videos might contain is not reasonably segregable." O'Connor Decl. ¶ 18; see 5 U.S.C. § 552(b) ("Any reasonably segregable portions of a record shall be provided to any person requesting such record after deletion of the portions that are exempt . . . ."). On the record before it, however, the Court cannot evaluate this claim. The videos comprise nearly 500 hours of film, averaging over ten hours per video. See O'Connor Decl. ¶ 8. But, save for the ISN number of the detainee involved and the date it was made, the Department's Vaughn index provides no information as to each video's length or unique content. And the Department's declarations offer only vague descriptions of the sort of events generally filmed in the FCE context. See id. ¶ 7. Without any sense of what share of the videos consists of non-exempt material, the Court cannot assess the Department's representation that the "kind and amount of editing" required to segregate material in this case "would require a team of technically qualified personnel . . . , at the least, several months." Id. ¶ 18.

Unfortunately, these declarations offer nothing more than that. They do not indicate, even vaguely, how the audiorecording might identify intelligence sources and methods. Indeed, they do not even indicate what the audiorecording is -- except that it is not a recording of a Combatant Status Review Tribunal. See Thomas Decl. ¶ 24. And, once again, they fall short of establishing that release could reasonably be expected to harm national security. See Larson, 565 F.3d at 865. Because the Department has not provided this information, it has not, as it must, "afford[ed] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." Campbell, 164 F.3d at 30 (internal quotation marks omitted). If it wishes to withhold this audiorecording under exemption 1, then, the Department must provide more support.

*     *     *     *     *

As indicated above, the Department has not established that it may withhold the recordings at issue under exemption 2. The Department has, on the other hand, shown that at least portions of the FCE videos are properly withheld under exemption 1. The Court will, therefore, deny both parties' motions for summary judgment as to these recordings, and will permit the Department an additional opportunity to supplement its declarations. The Court affords the Department this further -- and final -- chance primarily because of the national security concerns assertedly at issue. In its additional submissions, the Department shall clearly indicate which portions of the recordings it seeks to withhold under exemptions 1 and 2, and should justify why it deems those portions of the recordings exempt from disclosure. In doing so, the Department should be mindful of the legal standards set out in this decision. Accordingly, it should ensure that its declarations or a new Vaughn index subdivide the recordings into

manageable parts cross-referenced to the relevant portion of the claimed exemption.  See Int'l

Counsel Bureau, 657 F. Supp. 2d at 42.  The Department shall also confirm that its declarations

permit the Court to assess whether it has complied with its segregability obligations.  See

Kishore v. Dep't of Justice, 575 F. Supp. 2d 243, 259 (D.D.C. 2008) ("An agency must provide a

detailed justification and not just conclusory statements to prove that it has released all

reasonably segregable information." (internal quotation marks omitted)).  The Court repeats that

the Department is now being given a third opportunity to justify withholding these recordings;

the Court will not offer it a fourth.[12]

      B.      Photographs of the Detainees

The Department seeks to withhold photographs of the detainees pursuant to FOIA

exemption 6, which permits the withholding of "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6); see also Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982)

("personnel and medical files" includes all records containing "information which applies to a

particular individual").[13]  To determine what constitutes a "clearly unwarranted invasion of

---

[12] The Department has also argued that portions of the recordings may be withheld under exemptions 3 and 6.  See Vaughn Index; O'Connor Decl. ¶¶ 12, 14-17.  Because the Department has argued that exemptions 1 and 2 justify withholding the recordings in their entirety, and because exemptions 3 and 6 generally only apply when "the privacy of and identity of U.S. military personnel" could be revealed, O'Connor Decl. ¶ 12, the Court will not address the applicability of those narrower exemptions at this time.  If the Department still wishes to withhold portions of these recordings based on those exemptions, it should ensure that its submissions adhere to the standards laid out in this opinion.

[13] The Department's Vaughn index indicates that it also seeks to withhold the photographs under exemptions 1, 2, and 3.  But the Department has expressly disclaimed any reliance on exemption 1, see Def.'s Mot. at 8, and offers no argument in its briefs or declarations concerning
(continued...)

personal privacy," the court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (internal quotation marks omitted).  "This exemption creates a 'heavy burden'; indeed, 'under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act.'"  Morley, 508 F.3d at 1127 (quoting Wash. Post Co. v. Dep't of Health & Human Servs., 690 F.2d 252, 261 (D.C. Cir. 1982)).

The Department contends that exemption 6 permits it to withhold photographs of the detainees "because [their] release would disclose the identity of the detainees."  Def.'s Mot. at 19; see O'Ferrall Decl. ¶ 30 ("Photographs have been withheld because they contain the detainee's image which would identify that detainee.").  The Department believes that such disclosure "would risk both [the detainees'] safety upon release, through reprisals, and would undermine their likely willingness to cooperate with the intelligence collection activities."  Def.'s Mot. at 19.

The Department's argument is flawed.  For one, exemption 6 requires the Court to assess "the individual's right of privacy."  See Nat'l Ass'n of Home Builders, 309 F.3d at 32.  Indeed, "[o]nly where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests."  Associated Press v. Dep't of Def., 554 F.3d 274, 291 (2d Cir. 2009) (internal quotation marks omitted).  The Department's concerns about the detainees' safety and intelligence value, on the other hand, have

_____

[13](...continued)
the applicability of exemptions 2 or 3.  O'Connor does state that exemption 3 -- which protects from disclosure records that are "specifically exempted . . . by statute," 5 U.S.C. § 552(b)(3) -- "is properly claimed where the identity or image of U.S. military personnel deployed overseas may be revealed in the video or photographs."  O'Connor Decl. ¶ 14.  But the photographs at issue here, the Department notes, "do not depict anyone other than the four subject detainees."  O'Ferrall Decl. ¶ 14.

little to do with privacy.  See id. at 292 ("'[T]he focus, in assessing a claim under Exemption 6,

must be solely upon what the requested information reveals, not upon what it might lead to.'"

(quoting Dep't of State v. Ray, 502 U.S. 164, 180 (1991) (Scalia, J., concurring in part and

concurring in the judgment)) (emphasis in Ray)).[14]

Further, the government has already released a substantial amount of information about

these detainees, including, among other things, their names, the names of their families and

friends, and their employment histories.  See ICB's First Mot. for Partial Summ. J. [Docket Entry

17], Exs. 19-25.  And the detainees' photographs are already publicly available.  See id., Ex. 36

(website screenshot).  Any privacy interests weighing against "disclos[ing] the identity of the

detainees," Def.'s Mot. at 19, then, are slight.  See Hidalgo, 541 F. Supp. 2d at 255 (privacy

interest significantly lessened where information is "open and notorious").

The Department contends that there is no public interest in these photographs.  See Def.'s

Mot. at 19; Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989)

("[S]omething, even a modest privacy interest, outweighs nothing every time.").  The Court

disagrees.  The press has taken a substantial interest in the Guantanamo Bay detainees, and has

reported extensively on them and their condition.  See Pls.' Mot. at 30-33 (collecting newspaper

articles).  Indeed, as Judge Hogan has noted, "[p]ublic interest in Guantanamo Bay generally . . .

has been unwavering."  In re Guantanamo Bay Detainee Litigation, 624 F. Supp. 2d 27, 37

(D.D.C. 2009).  The Court need not linger on this point to conclude that photographs of these

detainees taken at Guantanamo Bay are of significant public interest.

---

[14] In any event, the Department's concerns about the detainees' safety and intelligence
value are no more supported than are most of the government's exemption 1 and 2 justifications.
See O'Connor Decl. ¶ 15.

Because there is only a slight privacy interest in withholding these photographs of detainees from public view, and because the public has a substantial interest in their disclosure, the Court will grant ICB's motion for summary judgment as to the withheld photographs."[15]

## CONCLUSION

For the reasons detailed above, the Court will grant the Department's motion for summary judgment as to the adequacy of its search, with the exception that the Department shall undertake an additional search of USCENTCOM's files using an alternate spelling of the detainees' names. The Court will also grant the Department's motion with respect to the four redacted audiorecordings. The Court will deny without prejudice both parties' motions for summary judgment as to the remaining audio- and videorecordings, and will require additional submissions from the Department to justify the withholdings. Finally, the Court will grant ICB's motion for summary judgment as to the withheld photographs. A separate Order accompanies this Memorandum Opinion.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Date: July 12, 2010

---

[15] When it supplements its submissions with respect to the recordings, the Department shall also explain why its most recent search of its records revealed fewer unique photographs of the detainees than the previous search.