UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL COUNSEL BUREAU, and<br>PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP,<br><br>           Plaintiffs,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.: 08-1063-JDB<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S SECOND RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant, the U.S. Department of Defense ("DOD"), respectfully moves for summary judgment in this case, which arises under the Freedom of Information Act ("FOIA"). Plaintiffs filed two FOIA requests on behalf of and relating to four enemy combatants detained by Defendant at the Guantánamo Bay Naval Base in Cuba, seeking the medical records of two of the detainees and photos, videotapes and audio recordings of all four of them. Subject to limited redactions, DOD produced the medical records and the Court granted summary judgment regarding those records. (R.31 at 2.) As for the imagery records, the Court denied DOD's first motion for summary judgment, granted in part Plaintiffs' motion for summary judgment, and ordered DOD to conduct a new search for responsive records. The Court granted in part and denied in part DOD's renewed motion for summary judgment and ordered DOD to undertake additional search efforts and to supplement its declaration regarding its claimed exemptions for the audio tape and several video tapes. (R.45 at 7-8, 17.)

As explained in the attached memorandum and supporting declarations, DOD has completed the additional search and supplemented its prior declarations with additional ones.

DOD continues to rely on its original declarations as well.

There are no disputes of material fact and summary judgment is appropriate.

October 15, 2010                               Respectfully submitted,

                                               RONALD C. MACHEN JR., D.C. Bar #447889
                                               United States Attorney
                                               for the District of Columbia

                                               RUDOLPH CONTRERAS, D.C. Bar # 434122
                                               Chief, Civil Division

                                               By:  /s/
                                               ALAN BURCH, D.C. Bar # 470655
                                               Assistant United States Attorney
                                               555 4th St., N.W.
                                               Washington, D.C. 20530
                                               (202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL COUNSEL BUREAU, and PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>    Defendant. | Civil Action No.: 08-1063-JDB |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, the U.S. Department of Defense ("DOD"), respectfully moves for summary judgment in this case, which arises under the Freedom of Information Act ("FOIA"). In response to the Court's last opinion on the merits (R.45), DOD has conducted its follow-up search, as described in the attached Supplement to Second Declaration of Jacqueline J. Scott; supplemented its *Vaughn* index; and supplemented its justification for its claimed exemptions in the attached Declaration of Rear Admiral Jeffrey Harbeson. Because there are no disputes of material fact, summary judgment is appropriate.

**Legal Standards for Summary Judgment**

The legal standards for summary judgment are well established and set forth in this Court's prior opinion in this case, reported at *International Counsel Bureau v. Dep't of Defense*, 657 F. Supp. 2d 33, 37-38 (D.D.C. 2009), and are summarized here briefly. Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the

outcome of the litigation. *Id*. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

In a FOIA suit, an agency is entitled to summary judgment once it shows that no material facts are in dispute and that all responsive information has been produced or is unidentifiable, not reasonably locatable, or exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). An agency satisfies the summary judgment requirements in a FOIA case generally with declarations or other evidence sufficient to make that showing. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).

## Argument

**I.    DOD Conducted a Reasonable Search for Responsive Records.**

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. DOJ*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. "The agency is required to set forth the search terms used and the search conducted, . . . as well as to describe the structure of the file systems searched[.]" *International Counsel Bureau*, 657 F. Supp. 2d at 38. In its supplemental declarations, DOD responds to the several search issues identified by the Court in its Memorandum Opinion (R.32).

The only remaining issue regarding DOD's search efforts arises from the search terms it used in its previous searches, specifically, its use of only one spelling for each of the four Plaintiff-detainees' names. (R.45 at 7, 9.) DOD offered in its last reply brief to use identified variants on the names and re-do its search with the alternate spellings (R.42 at 4) and "the Court . . . adopt[ed]" this proposal in its decision (R.45 at 7-8). As explained in the attached Scott Declaration, DOD re-did the searches with the variants of the spellings, and located no additional records that turned out to refer or relate to any of the Plaintiff-detainees. (Scott Dec. ¶¶ 3 & 5.) Accordingly, DOD requests summary judgment on the only remaining search issue.

## II.   DOD Properly Applied Exemption One.

Exemption One "provides that the disclosure provisions of the FOIA do not apply to matters that are '(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.' 5 U.S.C. § 552(b)(1)." As acknowledged by the Court, Exemption One requires only a minimal showing, due to the deference the Court is to accord DOD's classification determination. (R.45 at 14-15.) *See e.g., Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). Thus, to sustain its withholding of the imagery under Exemption One, DOD needs to show only that (1) all of the withheld imagery was classified, and (2) DOD's decision to classify it complies with the criteria in Executive Order 13292. See also Azmy v. DOD, 562 F. Supp. 2d 590, 597-98 (S.D.N.Y. 2008) (upholding DOD's use of Exemption One for information re Guantánamo Bay detainees under Exemption One).

DOD respectfully refers the Court to the attached *Vaughn* index that lists and describes each withheld "forced cell extraction" (or "FCE") video imagery record separately, indicating

the time of each, including the times within each video that are taken up by the four stages of each FCE, specifically, (a) assembly of the FCE team, (b) the team moving to the particular cell, (c) the FCE itself, and (d) the team leaving the area, as further described in the attached Harbeson Declaration. (¶ 15.) This addresses the Court's concern regarding the scope of DOD's claim of Exemption One and the specificity of DOD's *Vaughn* index regarding the FCE videos. (R.45 at 14 n.9, 18-19.)

The Court's prior opinion accepted DOD's claim of Exemption One for the portions of the videos that "indicate . . . how military personnel at Guantanamo Bay forcibly move prisoners in and out of their cells." (R.45 at 15.) Part (a) includes FCE team members describing the techniques they plan to use in the upcoming FCE and part (c) shows the FCE itself. (Harbeson Decl. ¶ 15(a) & (c), ¶ 18.) The supplemental descriptions in the Harbeson Declaration and *Vaughn* index specify which portions of the videos contain the sensitive, exempt information, and accordingly, DOD submits it is entitled to summary judgment on Exemption One for portions (a) and (c) of the FCE videos.

DOD also claims Exemption One for the one audio recording. The Court rejected DOD's prior claim for Exemption One for the audio as too conclusory and categorical. (R.45 at 17.) The attached Harbeson Declaration explains that the audio records an interrogation session with a Plaintiff-detainee and that it reflects the particular interrogation techniques that DOD personnel employed in the interrogation. (¶ 8.) The Declaration further explains that it cannot provide further factual detail about the contents of the audio recording without revealing the sensitive information sought to be protected. (*Id.*)

The Declaration also provides the predictive judgment about the likelihood of harm to

4

national security which this Court's opinion required (R.45 at 16-17.) Specifically, the Declaration explains that release "will allow the enemy to obtain crucial information as to how the interrogators use and apply the techniques required for obtaining information and intelligence, thereby allowing them to devise counter measures to avoid providing the information sought." (Harbeson Decl. ¶ 8.) The Declaration explains that this "will undermine the intelligence gathering efforts" of DOD and "would hinder future military missions, and the safety of U.S. and allied military personnel." (*Id*. *See also id*. ¶ 9.) This suffices to provide the "little proof or explanation necessary" (R.45 at 16) in order to show that release "reasonably could be expected to result in damage to the national security" (*id*.). Therefore, the Court should uphold DOD's claim of Exemption One.

### III.   DOD Properly Applied Exemption Two.

Section 552 (b)(2) of FOIA exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption Two applies primarily to two categories of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. *Crooker v. ATF*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981) (en banc).

The second category, sometimes referenced in the governing case law as the "high 2" category, *see Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992), covers documents relating to more substantive internal matters whose disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, or guidelines for bringing prosecutions or investigations; or where disclosure would risk circumvention of an agency statute or regulation.

*Id; see also Crooker*, 670 F.2d at 1073-74; R.45 at 11.

      Here, the Court rejected DOD's prior showing for high 2 Exemption for the FCE videos because DOD's prior declarations hedged the level of risk that release would pose to circumvention of national laws.  (R.45 at 12-13.)  Specifically, the Court required DOD to demonstrate a "significant risk" of circumvention to justify its assertion of the high Exemption Two.  The Harbeson Declaration answers the Court's concerns by explaining how release of each of the four parts of the FCE videos would risk circumvention of DOD procedures for security and handling of the detainees.  (¶¶ 19-21.)  Parts (a) and (c) of the videos describe and depict, respectively, the FCE procedures and release "would allow the adversary to anticipate the tactics" used by DOD in its FCEs and "more effectively resist an FCE, and this would put U.S. military personnel at further risk of injury."  (*Id*. ¶ 19.)  Similarly, parts (b) and (d) show the physical layout of the camp and "compilation of this information from all the videos would allow adversaries to reconstruct considerable portions of the layout of the camps, as well as the locations of the detainees within the camp, . . . thereby threatening the security of the camps."  (*Id*.)  In certain cases, part (c) of the videos further show "how detainees are housed in response to various acts of misconduct."  (*Id*. ¶ 20.)  The Declaration describes various means of dissemination of this information to other detainees, which would again put U.S. military personnel at increased risk of harm.  (*Id*.)

      The Harbeson Declaration also explains that the risk to U.S. military is not merely theoretical, but is based on DOD's experience with tracking Al Qaeda and its track record of actively monitoring U.S. military personnel's tactics and procedures.  (*Id*. ¶ 21.)  Based on this, Harbeson states unequivocally that "disclosure would create a significant risk of circumvention

of DOD techniques and harm national security." (*Id*.) Therefore, DOD respectfully requests summary judgment on high Exemption Two for the FCE videos.

**IV.     DOD Properly Applied Exemption Three.**

Exemption Three shields matters "specifically exempted from disclosure by statute . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  *See Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1284 (D.C. Cir. 1983).  This case involves application of 10 U.S.C. § 130b, which authorizes DOD, "notwithstanding section 552 of Title 5 [i.e. FOIA]," to withhold "personally identifying information regarding . . . any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit."  Despite the permissive nature of the authority in Section 130b, the plain language of the statute's reference to FOIA establishes that Section 130b meets the standard for triggering Exemption Three.

Here, DOD claims Exemption Three to redact all personally identifying information for DOD personnel assigned to JTF-GTMO and OARDEC because they were, at the relevant times, stationed in Guantánamo and acting in their official capacities as members of an overseas unit and a routinely deployable unit, respectively.  *See* O'Ferrall Decl. re Med. Recs. ¶¶ 14-16; Noone Decl. ¶ 10.  As further explained in the attached Harbeson Declaration, Exemption Three applies to part (a) of the FCE videos because in part (a) each team member identifies himself and explains what role he will have in the FCE in part (c). (¶¶ 23-24.)  Accordingly, the Court should uphold DOD's claim of Exemption Three.

7

**V.     DOD Properly Applied Exemption Six.**

Exemption Six protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has declared that the phrase "personnel and medical files" is to be interpreted broadly, and that all information that "applies to a particular individual" qualifies for consideration under this exemption. *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).

Once it has been established that the information at issue constitutes covered material equivalent to "personal and medical files," the Court is to balance the privacy interests against the public interest in disclosure, as explained further in *Judicial Watch*,

> to determine whether the [agency] appropriately withheld these names and addresses, "[the court] must balance the private interest involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the basic purpose of the Freedom of Information Act,' which is 'to open agency action to the light of public scrutiny')."

*Id.* at 199 (citations omitted). *See generally DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989).

DOD invokes Exemption Six for part (a) of the FCE videos imagery because its release would disclose the identity of the DOD personnel involved. (Harbeson Decl. ¶ 24.) Release of the identities of the particular DOD personnel would not shed light on government activities, but the personnel clearly have a substantial privacy interest, so the balance favors DOD's claim of Exemption Six. Plaintiffs do not appear to take issue with the application of Exemption Six to individuals other than the four subject detainees. (R.17-2.) The Court should uphold Exemption Six with respect to part (a) of the FCE videos.

**VI.     DOD Complied with its Segregability Obligations.**

This Court directed DOD to provide more granular descriptions of the contents of the videos to comply with the agency's segregation obligations. (R.45 at 17 n.11, *id*. at 19.) The attached *Vaughn* index and Harbeson Declaration provide the necessary level of detail. In particular, the latter explains that the personal information identifying DOD personnel is so interspersed throughout the FCE videos that further segregation would not be possible. (Harbeson Decl. ¶¶ 24-25.) Therefore, the Court should find that DOD complied with its segregation obligations as well.

## Conclusion

For the foregoing reasons, DOD respectfully requests that the Court grant its motion for summary judgment and enter judgment for Defendant on all remaining unresolved claims.

October 15, 2010                                    Respectfully submitted,

                                                    RONALD C. MACHEN JR., D.C. Bar #447889
                                                    United States Attorney
                                                    for the District of Columbia

                                                    RUDOLPH CONTRERAS, D.C. Bar # 434122
                                                    Chief, Civil Division

                                                    By:  /s/
                                                    ALAN BURCH, D.C. Bar # 470655
                                                    Assistant United States Attorney
                                                    555 4th St., N.W.
                                                    Washington, D.C. 20530
                                                    (202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL COUNSEL BUREAU, and<br>PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP,<br><br>      Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>      Defendant. | Civil Action No.: 08-1063-JDB |

**DEFENDANT'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE IN SUPPORT OF ITS
SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant, the U.S. Department of Defense ("DOD"), respectfully submits this Supplemental Statement of Material Facts Not in Genuine Dispute in support of its motion for summary judgment in this case, pursuant to Local Rules 7(m) and 56.1.

1. DOD re-conducted its search for responsive photos, videos, and audio recordings (collectively "imagery") by using the additional variations of the spellings of Plaintiff-detainees' names:

   a. "Fouzi Khalid Abdullah Al Awda" for Fawzi Khaled Abdullah Fahad Al Odah,

   b. "Fouad Mahoud Hasan Al Rabia" for Fouad Mahmoud Al Rabiah,

   c. "Khalid Bin Abdullah Mishal Thamer Al Hameydani" for Khalid Abdullah Misha'al Al-Mutairi, and

   d. "Faiz Mohammed Ahmed Al Kandari" for Fayiz Mohammed Ahmed Al Kandari.

   (Scott Decl. ¶¶ 3, 5.)

2. The videos of forced cell extractions ("FCE") contains personally identifying information

      of DOD personnel interspersed throughout.  (Harbeson Decl. ¶¶ 24-25.)

3. The responsive FCE videos were classified SECRET.  (*Id*. ¶¶ 17-18; *see also* O'Ferrall Decl. ¶ 26.)

4. The one responsive audio tape (.wav file) was classified SECRET.  (Harbeson Decl. ¶¶ 6-9.)

5. The DOD has reviewed the classification of the audio tape and the FCE videos and the classifications comply with established classification criteria.  (Harbeson Decl. ¶¶ 6-9, 17-18.)

6. The responsive imagery depict predominantly internal matters, the disclosure of which would pose a significant risk circumvention of a statute or agency regulation by helping hostile entities to gain specific knowledge of the operational methods employed in certain circumstances, and thereby assist in developing countermeasures or resistance tactics, putting members of the military at risk.  (*Id*. ¶¶ 19-22.)

7. Release of the responsive imagery would identify or might reasonably enable identification of DOD personnel.  (*Id*. ¶¶ 15(a), 23, 24.)

October 15, 2010

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS, D.C. Bar # 434122
Chief, Civil Division

By: \_\_/s/_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov