UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTERNATIONAL COUNSEL BUREAU** and **PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP,**<br><br>           Plaintiffs,<br><br>                v.<br><br>**UNITED STATES DEPARTMENT OF DEFENSE,**<br><br>           Defendant. | Civil Action No.  08-1063 (JDB) |

## MEMORANDUM OPINION

International Counsel Bureau and Pillsbury, Winthrop, Shaw, Pittman, LLP (collectively "ICB") bring this action against the United States Department of Defense ("Department") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking records pertaining to four individuals detained at Guantanamo Bay Naval Base.  The Court previously issued two opinions resolving the parties' cross-motions for summary judgment.  See Int'l Counsel Bureau v. U.S. Dep't of Def., 657 F. Supp. 2d 33 (D.D.C. 2009); Int'l Counsel Bureau v. U.S. Dep't of Def., 723 F. Supp. 2d 54 (D.D.C. 2010).  A third round of summary judgment cross-motions has been filed.  For the reasons detailed below, the Court will grant in part and deny in part both motions.

## BACKGROUND

This Court's previous opinions discuss the background of this case in great length. Therefore, the Court need not repeat that history here.  In its last opinion, the Court ordered the Department to undertake an additional search of USCENTCOM files using an alternate spelling of the detainees' names and denied the parties' cross-motions for summary judgment relating to the disclosure of forty-five videorecordings and one audiotape.  See Int'l Counsel Bureau, 723 F.

Supp. 2d at 67. The Court ordered the Department to provide additional submissions to justify its claimed withholdings, with an admonition that this would be the Department's "final chance" to supplement its declarations. Id. at 65. The Department has now provided supplemental declarations and a revised index pursuant to Vaughn v. Rosen, 484 F.2d 820 ("Vaughn index"). ICB continues to seek portions of the withheld videorecordings, and requests that the Department conduct another search for four videos of forced cell extractions ("FCE"s) that it claims took place on August 1, 2007, January 2, 2008, December 23, 2008, and December 25, 2008. Pl.'s Opp'n & Mot. for Summ. J. ("Pl.'s MSJ") at 2.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

FOIA requires federal agencies to release all records responsive to a proper request except those protected from disclosure by any of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980). The agency has the burden of proving that "each document

that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted); accord Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000).  The district court may award summary judgment to an agency solely on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973).

## DISCUSSION

### I. Claimed Exemptions

In its renewed motion for summary judgment, the Department invokes FOIA's exemption 2 to justify its withholding of the videorecordings in their entirety, and exemptions 1, 3, and 6 as to portions of the videorecordings.[1]  It also claims that one audiorecording should be withheld pursuant to exemption 1.  Because ICB does not contest the Department's withholding of the audiorecording pursuant to exemption 1, the Court will grant the Department summary judgment as to that recording.

However, the Court will deny the Department's motion for summary judgment relating to

---

[1] FOIA's exemption 1 permits agencies to withhold records that are appropriately classified under the proper procedures.  See 5 U.S.C. § 552(b)(1).  Exemption 2 protects from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 3 is for information "specifically exempted from disclosure by statute" subject to certain requirements.  5 U.S.C. § 552(b)(3).  Exemption 6 is for "personnel and medical files and similar files . . . the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6).

withholding the videorecordings in full on the basis of exemption 2.  The Supreme Court's decision in Milner v. U.S. Dep't of the Navy, --- U.S. ----, 131 S. Ct. 1259 (2011), makes clear that there is no "high 2" exemption as claimed by the Department; rather, exemption 2 is limited to "records relating to issues of employee relations and human resources."  131 S. Ct. at 1271; see also Skinner v. U.S. Dep't of Justice, 806 F. Supp. 2d 105, 112 (D.D.C. 2011) ("The difference between 'High 2' and 'Low 2' exempt information, long recognized by the D.C. Circuit, is no longer an accepted distinction.") (citing Milner).  No argument has been made here that the videos relate to "issues of employee relations and human resources" nor would such an argument be viable based on the record currently before the Court.  Because the Court will order that a representative sample of the videorecordings be produced for in camera review, it will also deny without prejudice both parties' motions for summary judgment as to the issues of segregability and withholding on the basis of exemptions 1, 3, and 6.

## II.   In Camera Review

FOIA allows but does not require courts to conduct in camera review of information withheld from disclosure by an agency.  5 U.S.C. § 552(a)(4)(B); Larson v. Dep't of State, 565 F.3d 857, 869-70 (D.C. Cir. 2009).  But when an agency's declarations "provide specific information sufficient to place the documents within the exemption category, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without in camera review."  Am. Civ. Liberties Union v. U.S. Dep't of Def., 628 F.3d 612, 626 (D.C. Cir. 2011) (internal citations and quotations omitted).  In camera inspection may be ordered, however, "on the basis of an uneasiness, [or] on a doubt that [the judge] wants satisfied before he takes responsibility for a de novo determination."  Spirko v. U.S. Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998) (citing Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (per curiam)).  The

availability of such review "does not depend on a finding of or even tentative finding of bad faith." Id. Instead, "the ultimate criterion" for in camera review is "[w]hether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." Id.; see also Larson, 565 F.3d at 869 (internal quotations and citations omitted).

Here, the Court already allowed the Department a "last chance" to supplement its declarations and Vaughn indices. See Int'l Counsel Bureau, 723 F. Supp. 2d at 65 ("The . . . Department is now being given a third opportunity to justify withholding these recordings; the Court will not offer a fourth."). However, problems remain with respect to the Department's submissions. These are too numerous to discuss in full but, most significantly, the Court had ordered the Department to "subdivide the recordings into manageable parts cross-referenced to the relevant portion of the claimed exemption." Id. Although the Department has attempted to do so, its characterizations of those sub-parts are inconsistent and confusing.[2] In addition, the Department's Vaughn indices and declarations also provide no illumination as to the actual lengths of the video, when certain segments begin and end, or how long such subdivided

---

[2] For example, the Department initially describes part (b) of the video as the FCE team moving to where the detainee is located, but claims that this information is not responsive to the FOIA request, presumably because no images of the detainee are contained therein. Def.'s Mot. for Summ. J. ("Def.'s MSJ") at 7; Decl. of J. Harbeson (undated) ("Harbeson Decl.") ¶ 15. However, in a supplemental declaration, which was intended to provide a "more precise description" meant to "explain [ ] ambiguities," the Department subsequently characterizes part (b) as showing "when the FCE team began the extraction of the detainee from his current location," which seems responsive to ICB's request. Supp. Decl. of J. Harbeson ¶ 8 (Jan. 14, 2011) ("2d Harbeson Decl."). Similarly, the Department initially described part (d) as "the FCE team departing the area," and asserts that part (d) has "no information responsive to the FOIA request." Def.'s MSJ at 7; Harbeson Decl. ¶ 15. However, the Department later described part (d) as "when the FCE team returned the detainee to his cell and secured the cell door." 2d Harbeson Decl. ¶ 8. The supplemental declaration also subdivides the video further ("Column E"), which it describes as including "the FCE team's exit procedures from the detainee's immediate area back to an FCE rallying point," but claims that this segment is also unresponsive to ICB's request.

segments run.  The Department has submitted several errata correcting previously-submitted Vaughn indices, along with a number of supplemental declarations.  Such corrections and supplements are encouraged and generally reflect an agency's good-faith attempt to comply with its FOIA obligations.  The problem here, however, is that these attempts by the Department to "correct" or supplement its prior submissions have resulted in further obfuscation, making it difficult for the Court to consider the validity of the Department's claimed exemptions and hampering ICB's ability to respond consistently to the Department's arguments.[3]

Nor do the declarations and Vaughn indices allow the Court sufficiently to consider the Department's claim of non-segregability.  The Court previously instructed that the Department to give a "detailed justification and not just conclusory statements to prove that it has released all reasonable segregable information."  Id. (quoting Kishore v. U.S. Dep't of Justice, 575 F. Supp. 2d 243, 259 (D.D.C. 2009)).  The Department now suggests that the videos are not segregable because  "JTF-GTMO personnel move in and out of the camera[] view."  2d Harbeson Decl. ¶¶ 20-22.  The Department also claims that "pre and post-extraction events" from the FCE videos cannot be released because they entail "security procedures and reactive measures that cannot be disclosed" and that releasing this information poses a risk to military personnel.  Id. ¶ 21.  While this argument seems more relevant to the propriety of the Department's claimed exemptions, the Department also raises these points with respect to segregability.  A similar assertion is made

---

[3] Based on the Department's initial characterizations of the videos and its representation that no responsive information existed in some portions, ICB stated that it had no objection to the redaction of parts (a), (b), and (d) from the videos. Pl.'s MSJ at 2.  However, because the Department later represented that images of the detainee were present in at least parts (b) and (d), and potentially in other portions of the video, the Court construes ICB's subsequent response as a withdrawal of its concessions.  With respect to ICB's arguments regarding inconsistency in the number of photographs, the Court is assured that the Department has clearly explained the reason for the discrepancy through its declarations.  See 2d Harbeson Decl. ¶¶ 5-6.

regarding footage of detainees undergoing medical examinations.  The Department states that medical personnel identities are unshielded, and that "the very medical procedures they employ are internal procedures" where release would "allow[] the opportunity for the enemy to search for weaknesses and leave an FCE vulnerable to attack."  Id. ¶ 22.  None of these statements, however, account for why images of the detainee -- which are responsive to ICB's request -- could not be reasonably segregated from exempt and non-responsive portions of the videos.

The Court acknowledges that in camera review should be used sparingly -- particularly where national security claims are raised.  See Hayden v. NSA, 608 F. 2d 1381, 1387 (D.C. Cir. 1979); see also Turner, 587 F.2d at 1195 ("[A] court should not resort to [in camera review] routinely on the theory that 'it can't hurt.'").  And the Court agrees that substantial weight and deference is accorded to an agency's assessment of the harm to foreign relations or the threat to national security that would result from disclosure.  See, e.g, Morley v. Cent. Intelligence Agency, 508 F.3d 1108, 1127 (D.C. Cir. 2007).  But, as described above, the written submissions provided by the Department simply do not allow the Court meaningfully to assess whether the claimed exemptions actually apply.  At this juncture, then, given the multiple opportunities the Department has received to supplement its declarations and Vaughn indices, and the lack of clarity and consistency that nevertheless persist in those submissions, the Court finds it appropriate to order in camera review.

Other courts have taken similar approaches, even when an agency has asserted national security or law enforcement concerns as the basis for withholding information.  For instance, in El Badrawi v. Department of Homeland Security, the court ordered in camera inspection because agency submissions "raised more questions than they have answered."  583 F. Supp. 2d 285, 313

(D. Conn. 2008). That court reasoned that, "[e]ven where national security implications are involved, the court must have sufficient information to review the agency's withholdings de novo." Id.; see also Am. Civil Liberties Union v. U.S. Dep't of Def., 389 F. Supp. 2d 547, 568-69 (S.D.N.Y. 2005) (describing in camera review of sample of photographs and videos relating to the treatment of detainees in Guantanamo Bay and Iraq). Given that the information ICB requests is the images of the detainees on the videorecordings, and the Department's position that none of the images can be (or should be) released to ICB, the Court finds it necessary to test those assertions by viewing a representative sampling of the videos themselves. Here, the ultimate consideration "turns on the contents of the withheld documents, and not the parties' interpretation of those documents." Spirko, 147 F.3d at 996 (quoting Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996)).[4] Accordingly, the Department shall produce three videos for in camera review, undertaking all necessary and appropriate security procedures and measures. These three videos should be representative of the forty-five videorecordings at issue in this case.

### III. Adequacy of Search

The Department also moves for summary judgment on the adequacy of its search. ICB, in turn, claims the search was inadequate for two reasons -- the Department's failure to use an alternate spelling of a detainee's name in its new search for responsive USCENTCOM files, and the failure to uncover four additional FCE videos ICB believes are in the Department's

---

[4] In addition to El Badrawi and American Civil Liberties Union, other courts have also ordered in camera inspection of videos, especially when the agency's written submissions fail to provide sufficient justification for withholding. See, e.g., Hertzberg v. Veneman, 273 F. Supp. 2d 67, 90 (D.D.C. 2003) (ordering in camera inspection of video footage withheld by the Forest Service regarding their reaction to forest fires because the court could not test the claimed exemptions "solely on the basis of the letters and declarations"); Prison Legal News v. Exec. Office for U.S. Attorneys, 08-cv-1055, 2009 WL 2982841, at * 4 (D. Colo., Sept. 16, 2009) (requiring in camera review of videorecordings in order to decide claims of non-segregability and exemptions).

possession.  To establish that its search was adequate, the Department "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents."  Morley, 508 F.3d at 1114 (internal quotation marks omitted); see also Weisburg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (same).  The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate," which depends on the facts of each case.  See Weisburg, 745 F.2d at 1485.  The agency must set forth the search terms used and the search conducted, see Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990), and describe the structure of the file systems searched, see Church of Scientology v. Internal Revenue Serv., 792 F.2d 146, 150-51 (D.C. Cir. 1986), aff'd, 484 U.S. 9 (1987).  In considering the adequacy of the search conducted, a court can rely on agency declarations but only when they are "relatively detailed and nonconclusory and . . . submitted in good faith."  Morley, 508 F.3d at 1116 (internal quotation marks omitted) (ellipses in original).  Ultimately, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The Department previously agreed to "undertake an additional search of USCENTCOM's files using an alternate spelling of the detainees' names."  Int'l Counsel Bureau, 723 F. Supp. 2d at 67.  The Department conducted that search and located additional records, although none were ultimately responsive to ICB's FOIA request.  See Def.'s MSJ at 3; Supp. to Sec. Decl. of Jacqueline J. Scott ¶ 3 ( Oct. 14, 2010).  According to ICB, disciplinary records describing FCEs produced in related litigation indicate that "Abu Khallaad"  was an additional name listed for Al Kandari.  ICB suggests that these records originated with the Department, and that the listed alias had not been part of the recent search.  Pl.'s MSJ at 8-9.  The Department does not dispute that

the records listing the name "Abu Khallaad" originated with it, and concedes that a search for the name "Abu Khallaad" could produce records, although it is not clear whether any such records would ultimately be responsive to ICB's request. See 2d Harbeson Decl. ¶ 15 ("While a key search in other electronic databases for 'Abu Khallaad' might yield matching textual information, no such data retrieval system is in place . . . in regards to FCE videos."). However, the Department replies that it "does not believe it is likely that use of 'Abu Khallad' as a search term is likely to locate any additional responsive records" because the ISN designation is "the key indexing method for FCE videos." Def.'s Reply at 2. This may be true. But, as ICB points out, its FOIA request was not confined to FCE videos. It asked for "[a]ny recording, including any image . . . depicting or reflecting . . . any [ ] aspect or activity of any [of the four detainees]." Am. Compl. ¶ 17.

Because the Department has not provided a satisfactory response to ICB's contention that it should have searched for records using an alternate spelling of the name that ICB discovered from the Department's own records, the Department shall conduct an additional search of USCENTCOM files with respect to the alias "Abu Khallaad." See, e.g., Canning v. U.S. Dep't of Justice, 919 F. Supp. 451, 461 (D.D.C. 1994) ("Plaintiff presented evidence that the FBI was aware of the fact that this individual was known by two names. Given this, it seems clear than an adequate search should have produced files listed under both names."); Utahamerican Energy Inc. v. Mine Safety & Health Admin., 725 F. Supp. 2d 78, 84 (D.D.C. 2010) ("As in Canning, omitting from the search an alternative name by which the subject of the search is known renders the search inadequate."). Accordingly, the Court will deny without prejudice the Department's renewed motion for summary judgment on the adequacy of its search based on alternative

spellings of detainee names.[4]

The Court, however, reaches a different result with respect to ICB's challenge to the adequacy of the Department's search for FCE videos, and its request that the Department search for four additional FCE videos from August 1, 2009, January 2, 2008, December 23, 2008, and December 25, 2008. ICB states that it has reason to believe, based on other records it received from the Department in related litigation, that recordings of FCEs from those dates exist.[5] However, the Department contends that "FCE videos are maintained and can be searched only through the ISN designation" and that these videos "are organized solely by ISN and not by any other means." 2d Harbeson Decl. ¶ 14 (emphasis in original). It further provides that any videos that would have been available via a search based on ISN already would have been produced. Id. Given these assertions, the Court concludes that the Department is not obligated to conduct a specific search for the four FCE videos, nor does its failure to uncover those four additional videos render the original search inadequate. See Iturralde, 315 F.3d at 315 ("The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of

---

[4] This is not an invitation for ICB to challenge the adequacy of the Department's search every time a new alias or name is unearthed from other documents it subsequently receives. The Court expects that with the completion of this one remaining search in USCENTCOM files for the name "Abu Khallaad," the Department will have satisfied the Court's prior instruction to conduct a new search based on the alternative names for the detainees.

[5] While the Department suggests that videorecordings of the FCEs may not have been made, ICB points to the Department's own declarations and the Standard Operating Procedures, which state that every FCE is required to be filmed. Pl.'s Reply at 7 (citing relevant documents). The requirement that FCEs be filmed, however, does not render the Department's search inadequate. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("It is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate . . . [a]fter all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them."); Rothschild v. Dep't of Energy, 6 F. Supp. 2d 38, 40 (D.D.C. 1998) (Plaintiff identifying two responsive documents "which may be in [the agency's] possession but were neither turned over to him nor listed in the Vaughn index . . . demonstrates that the government's search was not perfect. Perfection, however, is not the standard.").

the methods used to carry out the search.") (citing and quoting Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)); Defenders of Wildlife v. U.S. Dep't of Interior, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) ("The agency need not 'set forth with meticulous documentation the details of an epic search for the requested records.'") (quoting Perry v. Block, 864 F.2d 121, 127 (D.C. Cir. 1982)). Given the Department's statements that the videos are organized by ISN, and its prior declarations describing the search it has already conducted, the Court finds that the search with respect to the FCE videorecordings was adequate and denies ICB's motion for summary judgment insofar as ICB requests a new search or attacks the adequacy of the prior search.

## CONCLUSION

The Court grants in part and denies in part the Department's and ICB's motions for summary judgment on the adequacy of the Department's search. The Court grants in part the Department's motion for summary judgment on the withholding of the audiorecording in its entirety. As to the FCE videos, the Court denies the Department's motion for summary judgment on the basis of exemption 2, and denies both the Department's and ICB's motions for summary judgment on the issue of segregability and the remaining claimed exemptions. The Department will be directed to conduct an additional search for responsive documents under the name "Abu Khallaad" in USCENTCOM files. The Department shall also produce three representative videotapes for the Court's in camera review by June 11, 2012. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

                                        /s/ John D. Bates
                                          JOHN D. BATES
                                    United States District Judge

Date: May 23, 2012