UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTERNATIONAL COUNSEL BUREAU** and **PILLSBURY, WINTHROP, SHAW, PITTMAN, LLP,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF DEFENSE,**<br><br>**Defendant.** | Civil Action No.  08-1063 (JDB) |

MEMORANDUM OPINION

      International Counsel Bureau and Pillsbury, Winthrop, Shaw, Pittman, LLP (collectively "ICB") bring this action against the United States Department of Defense pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking records pertaining to four individuals detained at Guantanamo Bay Naval Base.  Several rounds of summary judgment motions have occurred in this case.  The only issues remaining involve the Department's withholding of forty-five forced cell extraction ("FCE") videos, one video of a detainee receiving a haircut while forcibly restrained, and the adequacy of the Department's search for records.  Currently before the Court are renewed motions and cross-motions for summary judgment on those remaining issues.[1]  Based upon the Court's *in camera* inspection of three representative videos, the hearing held on July 12, 2012, the several memoranda filed by the parties and the entire record herein, and for the reasons discussed below, the Court concludes that summary judgment shall be granted in its entirety to the Department on all remaining issues.

---

    [1]As stated in the Court's July 12, 2012 order, the Court deemed the parties' previous submissions and oral representations as constituting renewed motions and cross-motions for summary judgment.  See Order at 1, ECF No. 73.

**BACKGROUND**

The Court previously issued three opinions resolving the parties' prior cross-motions for summary judgment. See Int'l Counsel Bureau v. U.S. Dep't of Def., 657 F. Supp. 2d 33 (D.D.C. 2009); Int'l Counsel Bureau v. U.S. Dep't of Def., 723 F. Supp. 2d 54 (D.D.C. 2010); Int'l Counsel Bureau v. U.S. Dep't of Def., 864 F. Supp. 2d 101 (D.D.C. 2012). These opinions discuss the background of this case at great length. Hence, that history need not be repeated here. In the last round of summary judgment, the Court granted in part and denied in part both parties' motions on the propriety of withholding the FCE videos from disclosure, directed the Department to conduct an additional search for responsive documents under the name "Abu Khallaad" in U.S. Central Command ("USCENTCOM") files, and ordered the Department to produce three representative FCE videotapes for the Court's *in camera* review. See Int'l Counsel Bureau, 864 F. Supp. 2d at 110.

Subsequently, the Department conducted another search for relevant videos at the request of the Department's Office of General Counsel (OGC) after some discrepancies were found between the list of FCE videos and the videos actually received by OGC. Decl. of Caryn L.M. Hargrave ¶ 6 (June 18, 2012), ECF No. 70-3. This search resulted in forty-five FCE videos of one detainee and one additional video of another detainee receiving a haircut.[2] Id. ¶ 6a. The Department also performed an additional search for responsive records under the name "Abu Khallaad." 3d Decl. of Jacqueline J. Scott ¶¶ 1-2 (June 8, 2012), ECF No. 70-2 ("3d Scott Decl."). The Court held a hearing on July 12, 2012, deemed the parties' various submissions and

---

[2] The FCEs at issue all involve one detainee, Fawzi Khaled Abdullah Fahad Al Odah, and the detainee appearing in the haircut video is Khalid Abdullah Misha'al Al–Mutairi. See 2d Decl. of Ross Hyams ¶¶ 2, 7f (July 10, 2012), ECF No. 72-1.

arguments as renewed motions and cross-motions for summary judgment, and granted leave to the parties to file supplemental materials.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

FOIA requires federal agencies to release all records responsive to a proper request except those protected from disclosure by any of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 139 (1980). The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted); accord Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000). The district court may award summary judgment to an agency on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973).

## DISCUSSION

### I.     U.S. Central Command Records

The Department has represented that it undertook the additional search ordered by the Court for responsive records under the name "Abu Khallaad." See Def.'s Supp. Mem. at 1. It searched six organizations within USCENTCOM deemed likely to hold records pertaining to the alternate name "Abu Khallaad" and searched classified and unclassified files, using both electronic name and content searches, and conducted physical inspections of files. 3d Scott Decl. ¶ 2. The Department found no responsive records. Id. ¶ 3. Given the Department's representations, and the lack of any objections raised by ICB with respect to the adequacy of the search performed for files relating to the name "Abu Khallaad" the Court finds that the Department's search for responsive files is adequate and summary judgment will be granted to the Department as to that search.

### II.    Videos

#### A.    Issues Not in Dispute

The only issue remaining, then, is whether ICB is entitled to any portions of the video recordings that are responsive to ICB's FOIA request. The videos at issue are forty-five videos depicting forced cell extractions of a detainee and one video showing a detainee receiving a haircut while restrained. The Court has reviewed *in camera* a representative sample consisting of three forced cell extraction videos.

The Department divides the FCE videos into five segments, listed as (a) through (e). Segment (a) covers the pre-extraction meeting of personnel who will be involved in the FCE procedure ("FCE Team"). Segment (b) shows the FCE team starting the extraction process. Segment (c) shows the actual extraction. Segment (d) shows the FCE team returning the detainee to his cell, and ends when the FCE team is out of the cell and has locked the door. Segment (e) shows the FCE team leaving the cell location and returning back to the rallying point. Def.'s Supp. Mem. at 3, ECF No. 77; see generally Vaughn Index, ECF No. 79.

The portions of the video devoid of any detainee images – segment (a) and almost all of segment (e) of the videos -- are not responsive to ICB's FOIA request. Mots. Hr'g Tr. at 4:10-14. In addition, ICB concedes that it is only pursuing solo images of a detainee, and that it does not challenge the Department's invocation of FOIA Exemption 1 to withhold the haircut video in its entirety, since the Department has averred that it contains no solo images of a detainee. See Decl. of Colonel John V. Bogdan ¶ 4 (Sept. 11, 2012), ECF No. 77-2; ICB's Supp. Mem. at 2 n.1 & 2 ("ICB is not challenging the application of FOIA exemptions to anything but the solo detainee imagery."). ICB also agrees that it would not be reasonable to segregate solo images of a detainee that appear for less than ten seconds. See Mots. Hr'g Tr. 12:20-13:9. Of the thirty-nine solo images of a detainee that appear in the FCE videos, only thirteen of those images last ten seconds or longer. See 3d Decl. of Ross Hyams ¶ 4 (Sept. 12, 2012), ECF No. 77-3; Def.'s Supp. Mem. at 3. Accordingly, the dispute winnows down to whether ICB is entitled to these thirteen solo images of a detainee from the FCE videos. Defendant raises Exemptions 1 and $6^3$ as the

---

[3] FOIA Exemption 3 allows an agency to withhold information that is "specifically exempted from disclosure by statute" provided that certain other requirements are also met. 5 U.S.C. § 552(b)(3). The Department of Defense previously argued that Exemption 3 applied to portions of the videos where identifying information of military personnel appeared, because 10

bases for withholding these solo images from disclosure. Because the Department asserts that Exemption 1 applies to the entirety of the videos, the Court will address the applicability of this exemption first.

    B.    <u>Exemption 1</u>

Exemption 1 permits agencies to withhold records if they are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In other words, to show that it has properly withheld information under Exemption 1, an agency must show both that the information was classified pursuant to the proper procedures, and that the withheld information meets the standard for classification. <u>See</u> <u>Salisbury v. United States</u>, 690 F.2d 966, 971-72 (D.C. Cir. 1982).

Previously, the Department asserted Executive Order 12,958, as amended by Executive Order 13,292, as the basis for classifying the videos. <u>See</u> <u>Int'l Counsel Bureau</u>, 723 F. Supp. 2d at 62; <u>see also</u> Decl. of Brigadier Gen. Rafael O'Ferrall ¶¶ 12-13 (Jan. 15, 2009), ECF No. 16-2. As of December 29, 2009, Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("EO 13,526"), superseded and replaced these prior executive orders. In its most recent submission, the Department relies on EO 13,526. <u>See</u> Decl. of William K. Lietzau ¶ 5 (Sept. 12, 2012), ECF No. 77-1 ("Lietzau Decl."). In its substance, EO 13,526 provides for the same standards and procedures for classification as its predecessors. And, as with the previous orders, it allows for

---

U.S.C. § 130(b) allows an agency to withhold identifying information of armed forces assigned to certain units. The Department concedes – as it must – that Exemption 3 does not apply to the solo images of the detainee in the FCE videos, Mots. Hr'g Tr. at 27:10-25, which is the only remaining information that ICB seeks. Therefore, the Court need not address the applicability of Exemption 3.

information to be classified if its disclosure "could reasonably be expected to cause identifiable or describable damage to the national security." EO 13,526 § 1.4.

Under EO 13,526, information can be properly classified if the following requirements are met: (1) an original classification authority classifies the information; (2) the United States Government owns, produces, or controls the information; (3) the information falls within one or more of the protected categories listed in section 1.4 of the Executive Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the original classification authority is able to identify or describe the damage. See EO 13,526 § 1.1(a).  ICB does not appear to contest that the other requirements under EO 13,526 § 1.1(a) have been met; instead, it attacks only the Department's assertions with respect to the harm to national security. See Pls.' Supp. Mem. at 6-13.

Previously, the Court found that the Department 's supporting affidavits provided enough explanation to demonstrate how at least portions of the videos, showing the movement of detainees in and out of their cells, would allow hostile entities to develop counter-tactics. Int'l Counsel Bureau, 623 F. Supp. 2d at 63.  But the Court concluded that the record, at that time, did not justify withholding the entirety of the videos under Exemption 1. Id. At the motions hearing, the Department also conceded that the record did not specifically address whether Exemption 1 could be asserted over solo images of the detainee on the videos; instead, the arguments and supporting affidavits submitted by the Department were primarily raised in an Exemption 6 context with respect to solo images of the detainee. See Mots. Hr'g Tr. at 36-37.  The Court granted leave to the Department to supplement the record with respect to its Exemption 1

argument over solo images of the detainee. Id. at 37-38; Order, ECF No. 73 (July 12, 2012).

The Department has now submitted additional declarations addressing that issue. One is from William Lietzau, the Deputy Assistant Secretary of Defense for Rule of Law and Detainee Policy. Lietzau is an original classification authority under EO 13,526. Lietzau Decl. ¶¶ 1, 3. He states that the FCE videos are "properly classified in their entirety" under EO 13,526, id. ¶5, and elaborates on the reasons why the recordings are classified. He states that "there is a significant risk that public release, even of portions of forced cell extraction videos, would cause serious damage to national security." Id.

Lietzau asserts that public release of the videos would allow detainees to communicate through means other than the accepted channels provided for by JTF-GTMO and the International Committee of the Red Cross, which, in turn, would endanger national security. He explains that "detainees would quickly learn that these videos are a useful means of communicating with others, potentially including al-Qaeda and associated enemy forces not detained at Guantanamo," and states that detainees could use such means of communication to convey direct or coded messages. Id. ¶ 5a. He further states that detainees have attempted to communicate through covert or coded means in the past. Id. Moreover, Lietzau asserts that even a ten second image of a detainee waiting to be forcibly removed from his cell would show the public that a detainee was resisting the rules of the detention facility, which would allow al-Qaeda and its affiliates to create propaganda out of such images. Id. at ¶ 5a.

The Department, through Lietzau, also states that some detainees, as an act of resistance, choose to be forcibly extracted from their cells rather than comply with the detention facility's rules. If the videos were made public, it would encourage more detainees to engage in disruptive behavior that would likely result in forced cell extractions, hereby increasing the likelihood of

injury to both detainees and military personnel.  Id. at ¶ 5b.  As a result, JTF-GTMO would have to reconsider its practice of recording FCEs.  Lietzau also claims that public release of the videos would harm relationships between the United States, its allies, and other members of the international community, since it would raise "serious questions" as to whether the United States was acting in accordance with the Geneva Conventions, which, the Department asserts, have been interpreted as prohibiting the release of images of identifiable detainees without a legitimate purpose.  Id. at 5c.

       The Department also provided an affidavit by Major General Karl R. Horst, Chief of Staff of USCENTCOM.  See Decl. of Maj. Gen. Karl R. Horst (Sept. 13, 2012), ECF 80-1 ("Horst Decl.").  Like Lietzau, Horst is an original classification authority.  He is also an initial denial authority for FOIA requests, and is responsible for USCENTCOM's FOIA and Privacy Act office.  Horst Decl. ¶ 2. Horst asserts that the official release of the videos could reasonably be expected to harm national security.  He states that enemy forces in Afghanistan and throughout USCENTCOM's area of responsibility "have previously used videos and photographs out of context to incite the civilian population and influence government officials and would likely utilize [the FCE videorecordings] in the same manner," thereby putting U.S. military forces and its allies at increased risk.  Id.  ¶¶ 8-9.  He states that the FCE videos "are particularly subject to use as propaganda and to incite a public reaction because of their depiction of forcible guard and detainee interaction." Id. ¶ 10.  He claims that the images could be manipulated "to alter the images of the detainee's face or person to show physical signs of mistreatment," id. ¶ 11c, and spliced with other footage to create propaganda, id. ¶ 11d.  He further states that the source of the image is itself "inflammatory given the sensitivities surrounding the U.S. detention of foreign nationals," id. ¶ 11e.  Horst provides examples of previous occasions where release of

photographs and videos have provoked violence and anger.  See id. ¶¶ 7-8.  These examples are not exactly analogous, since the images Horst refers to are related to depictions of alleged abuse and misconduct, rather than solo images of the nature ICB seeks here.  However, the Department also claims that its prior release of images through "B-roll footage" (where detainees' faces were obscured, but which attempted to show the conditions of the detention facility), resulted in angered reactions and accusations against the Department of creating propaganda.  See  Ex. D to Lietzau Decl.

In any event, these additional declarations, providing plausible explanations of the harm to national security from the release of even solo images of a detainee, and explanations for why the videos were appropriately classified in their entirety, "merit substantial weight." Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998); see also Morley v. CIA, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."); Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009) ("We have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review.") (internal quotation marks omitted); Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003) (noting that "substantial weight" is given "to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights" into adverse consequences that might result in disclosure of a particular classified record) (internal quotations and citations omitted).

The Department has identified particular harms and dangers to national security from disclosure of the information ICB seeks.  It claims that release of even solo images would allow

such images to be manipulated and/or used as a propaganda tool and that release of the footage also raises the risk of its use as a vehicle for covert communication.  Perhaps more hypothetical are the Department's arguments that military members would be placed at greater risk because release of the videos would encourage detainees to trigger more forced cell extractions in the chance that such encounters would be videotaped, and that the release of these videos would threaten foreign relations.  Nevertheless, in sum, the Department has provided sufficient explanations as to how these solo images, if released, "reasonably could be expected to result in damage to the national security" and are therefore properly withheld under exemption 1. Larson, 565 F.3d at 865.

ICB's arguments against the Department's invocation of Exemption 1 are unavailing. It essentially claims that the Court should divorce the solo images from the context in which they are taken.  In that light, ICB asserts that the Department's primary reasons for withholding disclosure under Exemption 1– the use of images in propaganda efforts and covert communications –  are too hypothetical and attenuated.  But context matters.  The Department has provided plausible, non-conclusory reasons why even solo images of detainees taken from the forced cell extraction videos could pose a substantial risk and danger to national security. The Court finds no reason to second-guess such assertions, particularly when this Circuit has deemed it "unwise" for courts "to undertake searching judicial review" when it comes to assessments of harms to national security based on the agency's particular expertise. Larson, 565 F.3d at 865; see also Morley, 508 F.3d at 1124.

In arguing for disclosure, ICB compares the solo images in the FCE videos to other information that has been publicly released.  It argues that the Department's national security contentions are undermined by its own release of seemingly similar types of information.  For

example, it claims that the Department has already disclosed written summaries of the forced cell extractions, see ICB's Supp. Mem. at 9, and "disciplinary records that include extensive documentation of FCEs," id. at 11.  It also claims that the solo images in the videos are similar to "B-roll" footage made publicly available by the Department, and that they are also akin to the photographs the Court previously ordered disclosed pursuant to Exemption 6.

But the information ICB seeks here – solo images of the detainees from the FCE videos themselves – differs from the written descriptions of those videos, other disciplinary records, or even the "B-roll" of footage that the Department has released.  See Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007) (to prevail on argument that information should be released because it has already been previously disclosed, "the information requested must be as specific as the information previously released . . . [and] must match the information previously disclosed"); Judicial Watch v. U.S. Dep't of Def., 857 F. Supp. 2d 44, 48 (D.D.C. 2012) ("A picture may be worth a thousand words. And perhaps moving pictures bear an even higher value. Yet, in this case, verbal descriptions of the death and burial of Osama Bin Laden will have to suffice, for this Court will not order the release of anything more.").  ICB's reliance on the photographs the Court previously ordered disclosed is similarly infirm.  As ICB concedes, the Department withdrew its Exemption 1 claim regarding the photographs when information indicated that the Department had previously released them. Mots. Hr'g Tr. at 10:16-20; see also Int'l Counsel Bureau, 723 F. Supp. 2d at 65 n.13 (noting that the Department "expressly disclaimed any reliance on exemption 1" with respect to the photographs).  The Court then ordered disclosure of the photographs only after rejecting the Department's Exemption 6 arguments. Int'l Counsel Bureau, 723 F. Supp. 2d at 67.  Here, there is no indication in the record that any portion of the FCE videos – which have been classified "SECRET" – were ever publicly released.  And, as this Court noted, the

considerations and analysis for disclosure under Exemption 1 and Exemption 6 differ.  See Mots. Hr'g Tr. at 36-38; see also Morley, 508 F.3d at 1123, 1126 (comparing Exemption 1's requirements of showing proper classification procedures with Exemption 6's instruction to weigh public  interests against privacy interests and noting Government's heavier burden under Exemption 6 for withholding information compared to other exemptions); Assoc. Press v. U.S. Dep't of Def., 462 F. Supp. 2d 573, 576 & 577-78 (S.D.N.Y. 2006) (withholding photographs of detainees pursuant to Exemption 1, but ordering disclosure of height and weight information for detainees under Exemption 6).

    C.    Exemption 6 and Segregability

Having concluded that the solo images ICB seeks are properly classified and withheld from disclosure under Exemption 1, the Court need not address the parties' arguments under Exemption  6.  See, e.g., Am. Civ. Liberties Union v. Dep't of State, --- F. Supp. 2d ----, 2012 WL 2989833, at *7 n.3 (D.D.C. 2012) ("Although the State Department also relies on Exemptions 6 and 7 as alternative bases for withholding . . . the Court need not address whether those exemptions have been properly invoked because Exemption 1 covers all the information withheld.").  And because the Court concludes that the solo images of the detainees – the only portions of the videos ICB now seeks – were properly classified, there is no issue with respect to their segregability. Indeed, there is nothing remaining for the Department to segregate.  See Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1026-27 (D.C. Cir. 1999) (agency only required to provide reasonably segregable portion of a record after exempt portions are deleted, unless the portions are inextricably intertwined) (internal citations omitted).[4]

---

[4] As the Court indicated at the motions hearing, the government's obligation to segregate exists "even in classified documents, which may be disclosed without danger to national security," Founding Church of Scientology of Wash., D.C., Inc. v. Bell, 603 F.2d 945, 951 (D.C.

Having concluded that the solo images are properly classified and have been appropriately withheld pursuant to Exemption 1, the Court finds that there is no segregable non-exempt information to which ICB is entitled.

## CONCLUSION

For the reasons expressed above, the Court will **DENY** ICB's motion for summary judgment and **GRANT** the Department of Defense's motion for summary judgment on the remaining issues – the adequacy of its search with respect to responsive information found under the alternative spelling of the name "Abu Khallaad" and the withholding of the forced cell extraction and haircut video recordings under Exemption 1.  A separate order will accompany this memorandum opinion.

**SO ORDERED.**

       /s/ John D. Bates
       JOHN D. BATES
       United States District Judge

Date: December 4, 2012

---

Cir. 1979).  Nevertheless, the classified nature of a document, in some circumstances, is at least a consideration.  See Edmonds v. FBI, 272 F. Supp. 2d 35, 57 (D.D.C. 2003) (citing Anderson v. CIA, 63 F. Supp. 2d 28, 30 (D.D.C. 1999)) (considering classified nature of documents withheld pursuant to Exemption 1 in finding segregability unnecessary where government affirmatively stated that there was no segregable material that can be disclosed).  Here, because ICB has narrowed its request to solo images of detainees, which the Court has found to be properly classified and withheld under Exemption 1, the Court need not consider ICB's arguments with respect to segregability as to the remaining portions of the videos.